[No. D057034. Fourth Dist., Div. One. Feb. 15, 2011.]

In re JACK C., III, a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
J.C. et al., Defendants and Appellants.

[No. D057499. Fourth Dist., Div. One. Feb. 15, 2011.]

In re ELIZABETH P. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
J.C. et al., Defendants and Appellants.

## COUNSEL

Sahyeh Samantha Riopelle, under appointment by the Court of Appeal, for Defendant and Appellant J.C.

Kathleen M. Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant Anna C.

John J. Sansone and Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Gary C. Seiser and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Minors.

## OPINION

**O'ROURKE, Acting P. J.**—J.C. and Anna C. appeal orders denying a petition to transfer dependency jurisdiction to the Bois Forte Band of Chippewa in Minnesota under title 25 United States Code section 1911(b) and Welfare and Institutions Code[1] section 305.5, subdivision (b). We reverse the orders with directions.

[1] Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

J.C. and Anna C. (the parents) have four children, Jackie P., Elizabeth P., Andrew P. and Jack C., III (Jack). Jackie is now 18 years old and is not the subject of these proceedings. Elizabeth, Andrew and Jack (the children) are ages 16, 15 and 4 years, respectively. The family's history was detailed in a previous appeal. (*In re Jack C. III* (Jun. 11, 2008, D052156) [nonpub. opn.].) Here, because the issues on appeal concern compliance with the Indian Child Welfare Act of 1978, title 25 United States Code section 1901 et seq. (ICWA), we only briefly discuss the underlying circumstances of the dependency proceedings.

The parents have a history of child welfare referrals due to substance abuse, domestic violence and Anna's mental health condition, which was diagnosed as schizophrenia. In 2005, to avoid dependency proceedings, the maternal grandparents became the legal guardians of Jackie, Elizabeth and Andrew. Jack was born in June 2006. In September 2007, after Anna was arrested for assaulting and injuring Jackie, Jack became a dependent of the juvenile court and was placed with his maternal grandparents.

When Jack's dependency proceedings began, J.C. informed the social worker his paternal grandmother, Dorothy Ann B., was a registered Chippewa Indian. J.C. did not know whether he or his siblings were registered tribal members. They had lived on the Nett Lake Chippewa reservation for one to two years in the late 1960's. J.C. did not have contact information for his siblings.

In October 2007 the San Diego County Health and Human Services Agency (the Agency) sent notice to the six bands of the Minnesota Chippewa Tribe.[2] The bands indicated Jack was not eligible for enrollment.[3] In January 2008 the court found that ICWA did not apply.

In April 2009 the court terminated reunification services in Jack's case and set a section 366.26 hearing.

---

[2] The Minnesota Chippewa Tribe consists of the Chippewa Indians of the White Earth, Leech Lake, Fond du Lac, Bois Forte (Nett Lake), and Grand Portage Reservations and the Nonremoval Mille Lac Band of Chippewa Indians. The six bands formed a representative Chippewa tribal organization to maintain and establish justice for the tribe, conserve and develop tribal resources and common property, and promote the general welfare of themselves and their descendants. (Preamble, Revised Constitution and Bylaws of the Minnesota Chippewa Tribe, Minnesota.)

[3] The Bois Forte Band of Chippewa later acknowledged there had been a "mix-up" in Jack's case because at that time it did not routinely check the names of children's grandparents after receiving ICWA notice.

In May 2009 the Agency initiated dependency proceedings on behalf of Elizabeth and Andrew (the siblings). The grandparents could not manage the siblings' out-of-control behaviors and decided to terminate the guardianship. The siblings were living with the parents, whose chaotic circumstances had not changed since Jack was detained in protective custody.

When the siblings' dependency proceedings began, J.C. reported that his maternal great-grandparents were members of the Nett Lake Indian tribe and his brothers and sisters were registered members of the tribe.

In September 2009 the social worker contacted the children's paternal uncle, who said he was a member of the Bois Forte Band of Chippewa (Band). The social worker sent notice to the Band with more information about the family than had it provided to the Band in 2007. On receipt of notice, the Band stated the children were eligible for enrollment and notified the trial court of its intent to intervene in the children's dependency proceedings.

On October 7, 2009, J.C. petitioned to transfer jurisdiction of the children's dependency cases to the Band (the transfer petition). On October 15, the Band notified the trial court it was exercising its right to intervene in the children's cases under title 25 United States Code section 1911(c). On October 19, Angela Wright, the Indian child welfare supervisor for the Band, averred the children's dependency proceedings were governed by ICWA because the minor children were eligible or enrolled members of the Band.

The Agency opposed J.C.'s petition to transfer jurisdiction to the Band. The court continued the hearings in the children's cases to allow the Band to respond to the transfer petition.

In Jack's case, the court considered the transfer petition at his section 366.26 hearing, which began on March 5, 2010. The court admitted the Agency's reports in evidence. Angela Wright appeared telephonically on behalf of the Band. She testified the Band was in agreement with termination of parental rights and Jack's adoption by his maternal grandparents. Wright was not aware of the tribal court's position on accepting jurisdiction; however, the Bois Forte Commissioner of Judicial Services was scheduled to meet with the Band's prosecuting attorney, Thomas Sjogren, to determine the Band's position.

On March 19, 2010, the court admitted a letter it had received from Sjogren in evidence. Sjogren stated he represented the Band in all child protection proceedings in its tribal court. The Band did not join the father's petition to transfer jurisdiction; however, it formally intervened in the children's cases on October 15, 2009, under title 25 United States Code section

1911(c). The Band did not automatically accept transfers. The tribal court considered each case on its merits and assessed the effect transfer may have on the child, the parent seeking transfer and the Band. The tribal court did not issue advisory opinions and would not determine whether to accept or decline jurisdiction until the state court transferred the case.

Sjogren stated that according to the tribal enrollment coordinator for the Band, J.C. was not currently a member of the Band. J.C.'s enrollment application was incomplete pending receipt of a certified copy of his birth certificate. The children "possess[ed] a Bois Forte degree of Indian blood of 1/4" and were eligible for enrollment. However, their applications for enrollment could not be completed until J.C.'s application was processed.

With respect to the children's status, Sjogren wrote, "There is no question in my mind that these are Indian children who will ultimately be enrolled in the Bois Forte Band of Lake Superior Chippewa upon completion by someone of the necessary paperwork." Sjogren stated the "bureaucratic" requirements were necessary because in addition to ICWA protections, there were substantial other benefits associated with tribal membership, including hunting, fishing, trapping and gathering privileges, annual per capita distributions from the Band, and eligibility for tribal, state and federal programs.

Wright testified that the tribal court was able to take custody over children before they were enrolled in the Band. The Band could then complete the enrollment process. Jack's adoptive parent would also be able to enroll him in the Band.

The trial court denied the motion to transfer jurisdiction in Jack's case. The court stated it was not satisfied Jack was "an Indian child as defined by the law, notwithstanding that he may later become an Indian child and notwithstanding there's no doubt he may later become an Indian child." The court said even if Jack was an Indian child, the petition to transfer jurisdiction to the Band was not filed within a reasonable time after notice of the entirety of the proceedings. The court incorporated the arguments of the Agency and minor's counsel in its findings. Counsel had argued transferring jurisdiction to the Band would create an undue hardship for the parties and impede the presentation of evidence on Jack's behalf. The trial court found that Jack was adoptable and terminated parental rights.

On June 2, 2010, at the conclusion of the contested disposition hearing in the siblings' cases, the court stated Elizabeth and Andrew were not currently

members of the Band and therefore were not Indian children within the meaning of ICWA. Without further hearing, the court took judicial notice of Jack's file, and incorporated by reference its findings and orders with respect to the transfer petition. The court bypassed reunification services and ordered alternative permanent placement plans of long-term foster care for the siblings. Wright appeared telephonically and concurred with the recommended disposition.

The Agency informed the court it had a certified copy of J.C.'s birth certificate in its possession. The court ordered the Agency to send J.C.'s birth certificate to the Band.

## APPELLATE MOTIONS

In *In re Elizabeth P.*, the Agency asks this court to augment the record with a status review report dated November 18, 2010, to show that the siblings are enrolled members of the Minnesota Chippewa Tribe. (Cal. Rules of Court,[4] rule 8.155(a)(1)(A) [on the motion of any party, the reviewing court may augment the record to include any document filed or lodged in the case in superior court].) In *In re Jack C. III*, J.C. asks this court to take judicial notice of the same report for the same purpose. (Code Civ. Proc., § 909; Evid. Code, §§ 452, 459.)

We grant the motion to augment the record with the Agency's November 18, 2010 report and the request to take judicial notice that the Minnesota Chippewa Tribe enrolled Elizabeth and Andrew as tribal members on November 4, 2010. Minor's counsel also informs this court the Minnesota Chippewa Tribe enrolled Jack as a tribal member on November 17, 2010.

## DISCUSSION

### I

### ICWA

The United States Congress enacted ICWA to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32 [104 L.Ed.2d 29, 109 S.Ct. 1597] (*Holyfield*).) ICWA was designed to protect the best interests of Indian children and promote the

---

[4] All further rule references are to the California Rules of Court.

stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. (25 U.S.C. § 1902; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].)

At the heart of ICWA are its jurisdictional provisions over child custody proceedings[5] involving Indian children domiciled both on and off the reservation. (*Doe v. Mann* (9th Cir. 2005) 415 F.3d 1038, 1049, citing *Holyfield, supra,* 490 U.S. at p. 36.) ICWA clearly establishes a preference for tribal court jurisdiction in child custody proceedings involving Indian children. (*In re M.M.* (2007) 154 Cal.App.4th 897, 907 [65 Cal.Rptr.3d 273]; accord, *In the Interest of J.W.* (Iowa Ct.App. 1995) 528 N.W.2d 657, 660; *In re J.L.P.* (Colo.App. 1994) 870 P.2d 1252, 1256.) The tribal courts have exclusive jurisdiction over any child custody proceeding involving an Indian child who resides or is domiciled within the tribal reservation. (25 U.S.C. § 1911(a); Welf. & Inst. Code, § 305.5, subd. (a).) When a child custody proceeding involves an Indian child who is not domiciled on the reservation, ICWA creates *concurrent but presumptively tribal jurisdiction,* which requires the state court to transfer jurisdiction to the tribal court unless good cause exists to deny the transfer. (25 U.S.C. § 1911(b); Welf. & Inst. Code, § 305.5, subd. (b); *Holyfield, supra,* 490 U.S. at p. 36.)

Before we turn to the discussion whether the court erred when it found that there was good cause to deny the petition to transfer jurisdiction of the children's cases to the Band, we address the parents' contention the court erred when it denied the transfer on the ground the children were not yet Indian children within the meaning of ICWA.

## II

## THE CHILDREN WERE INDIAN CHILDREN

The parents argue the court erred when it found that the children were not Indian children and denied the transfer petition on the ground ICWA did not apply. They contend the children were Indian children within California's definition of "Indian child." The parents further state in the event the children did not meet the definition of an "Indian child" under title 25 United States Code section 1903(4), the court was required to proceed as if the children were Indian children under rule 5.482(c).

---

[5] For purposes of ICWA, the term "child custody proceeding" includes foster care placement where the parent or Indian guardian cannot have the child returned on demand, termination of parental rights, and preadoptive and adoptive placements of the child. (25 U.S.C. § 1903(1).)

The Agency contends the definition of "Indian child" under federal law is jurisdictional. It argues California law cannot be interpreted to authorize broader or expanded protection for a child who is not an Indian child under the plain terms of the federal statute. (25 U.S.C. § 1903(4).)

**(1)** Issues of law are reviewed de novo. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387 [97 Cal.Rptr.3d 464, 212 P.3d 736] (*Hunt*).) ICWA, federal guidelines implementing ICWA, and any state statutes, regulations or rules promulgated to implement ICWA shall be liberally construed to effectuate its purpose and preferences. (Bureau of Indian Affairs: Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, A.1. (Nov. 26, 1979) (Guidelines).)

ICWA sets forth minimum substantive and procedural standards to protect the interests of Indian children, Indian families and Indian tribes. (*In re Kahlen W., supra*, 233 Cal.App.3d at p. 1421; 25 U.S.C. § 1921; accord, Welf. & Inst. Code, § 224, subd. (d).) To fully effectuate ICWA in state Indian child custody proceedings, the California Legislature enacted a comprehensive reorganization of statutes related to the application of ICWA, effective January 1, 2007. (§ 224 et seq.; *In re Damian C.* (2009) 178 Cal.App.4th 192, 197 [100 Cal.Rptr.3d 110] [" '[A]lthough ICWA was enacted more than 25 years ago, state courts and county agencies in California continue to violate not only the spirit and intent of ICWA, but also its express provisions.' "].) The reorganization of statutes and codification into state law of various provisions of ICWA, the Guidelines and state court rules affirmed the state's interest in " 'protecting Indian children and the child's interest in having tribal membership and a connection to the tribal community.' " (*Damian C.*, at p. 197.)

■ In certain respects, California's Indian child custody framework sets forth greater protections for Indian children, their tribes and parents than ICWA. (*In re Damian C., supra*, 178 Cal.App.4th at p. 197 [legislative purpose was to broaden the interpretation of current laws]; see, e.g., §§ 224, subd. (d), 224.3, subd. (e)(1), 305.5.) Both federal and state law expressly provide that if a state or federal law provides a higher level of protection to the rights of the parent or Indian guardian of an Indian child, the higher standard shall prevail. (25 U.S.C. § 1921; Welf. & Inst. Code, § 224, subd. (d) [the higher standard of protection also applies to the rights of the child's Indian tribe].)

Although the children were not enrolled members of the Band at the time of the proceedings, we conclude they were Indian children within the meaning of the federal and state definitions of "Indian child." Title 25 United States Code section 1903 states, "[E]xcept as may be specifically provided

*otherwise*, the term—[¶] . . . [¶] 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . ." (25 U.S.C. § 1903(4), italics added.) Similarly, under California law, section 224.1, subdivision (a) provides that *"unless the context requires otherwise,"* the term "Indian child" is defined as provided in section 1903 of ICWA. (Welf. & Inst. Code, § 224.1, subd. (a), italics added.)

■ The United States Supreme Court noted that "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community," and cautioned against intrusion into tribal traditions by the courts. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 72, fn. 32 [56 L.Ed.2d 106, 98 S.Ct. 1670].) ICWA applies to children who are "members" of a tribe, but does not constrain how membership is to be defined. (*In re Adoption of C.D.K.* (D. Utah 2009) 629 F.Supp.2d 1258, 1261, 1264; *In re R.R., Jr.* (Tex.App. 2009) 294 S.W.3d 213, 218 [ICWA does not provide a statutory definition of the terms " 'member of an Indian tribe' " or " 'eligible for membership' "].)

"It is the tribe's prerogative to determine membership criteria." (Guidelines,[6] *supra*, § B.1., Commentary; see Welf. & Inst. Code, § 224.3, subd. (c).) "Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative." (Guidelines, *supra*, § B.1., Commentary.) Congress considered and rejected proposed language that would have limited the application of ICWA protections to enrolled members of Indian tribes. (*Nelson v. Hunter* (1995) 132 Or.App. 361 [888 P.2d 124, 126, fn. 4], citing 1978 U.S. Code Cong. & Admin. News, pp. 7530, 7538–7539, 7558–7563.) Thus enrollment in a tribe is not always required to be a member of a tribe. (*U.S. v. Broncheau* (9th Cir. 1979) 597 F.2d 1260, 1263; *In re Jose C.* (2007) 155 Cal.App.4th 844, 849 [66 Cal.Rptr.3d 355] [children did not meet federal definition of "Indian child" because enrollment was required under tribal law and neither the children nor their mother were enrolled in the tribe]; *In re Kahlen W., supra*, 233 Cal.App.3d at p. 1425 [a roll number is not crucial to a determination of the child's Indian status]; *In re Arianna R.G.* (2003) 259 Wis.2d 563, 575–576 & fn. 13 [657 N.W.2d 363] [the absence of enrollment alone may not necessarily be determinative of whether a person is a member of a tribe]; *In re Baby Boy Doe* (1993) 123 Idaho 464 [849 P.2d 925, 931] [enrollment and membership are not synonymous].)

---

[6] The Guidelines are not intended to have binding legislative effect on state courts. (Guidelines, *supra*, § B.1; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1157 [30 Cal.Rptr.3d 726].) However, construction of a statute by the executive department charged with its administration is entitled to great weight. (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1412 [80 Cal.Rptr.3d 287]; *In re Junious M.* (1983) 144 Cal.App.3d 786, 792, fn. 7 [193 Cal.Rptr. 40].)

Thus we are not persuaded by the Agency's argument the children were not Indian children within the meaning of ICWA because neither they nor their father were enrolled members of the Band. As we have discussed, the United States Supreme Court, the Guidelines and other federal and state case law indicate the definition of tribal membership under ICWA is not as limited as the Agency contends, and the determination whether the child is an Indian child within the meaning of ICWA depends in large part on the tribe's membership criteria. Because of differences in tribal membership criteria and enrollment procedures, whether a child is an Indian child is dependent on the singular facts of each case. (See, e.g., *Application of Angus* (1982) 60 Or.App. 546 [655 P.2d 208, 212] [formal membership requirements and methods of proof of membership differ from tribe to tribe].)

Here, notwithstanding J.C.'s lack of membership in the Band, the record shows the Band considered the children to be Indian children within the meaning of ICWA.[7] Sjogren, whom the court considered the Band's legal

---

[7] Article II, section 1, subdivision (c) of the Revised Constitution and Bylaws of the Minnesota Chippewa Tribe, Minnesota, provides the membership of the Minnesota Chippewa Tribe includes "[a]ll children of at least one quarter degree (1/4 degree) Minnesota Chippewa Indian blood born after July 3, 1961, to a member, provided that an application for enrollment was or is filed with the [tribal authority] within one year after the date of birth of such children." Alternatively, article II, section 3 states "[a]ny person of Minnesota Chippewa Indian blood who meets the membership requirements of the Tribe, but who because of an error has not been enrolled, may be admitted to membership in the Minnesota Chippewa Tribe by adoption, if such adoption is approved by the Tribal Executive Committee, and shall have full membership privileges from the date the adoption is approved."

Here, the Band's tribal enrollment coordinator stated J.C. was not currently a member of the Band and his children's applications for enrollment could not be processed until the Band received J.C.'s state-certified birth record.

Although the Minnesota Chippewa Tribe determines tribal enrollment, it does not operate an ICWA program. The Minnesota Chippewa Tribe does not administer its own ICWA program, and its constitution does not limit the application of ICWA protections to children who have been formally accepted into the Minnesota Chippewa Tribe. Each of the independent, sovereign bands operates an independent ICWA program for their respective enrollees. (Rev. Const. & Bylaws of the Minn. Chippewa Tribe, Minn., art. II, § 1.)

The Band's rules of court define an "Indian" as "[a]ny member of a federally recognized Indian tribe, band, or community, or Alaskan native[]; any person so defined by federal or state law, and any person of indigenous descent who holds himself out to be an 'Indian' person and is recognized by the Bois Forte community as such." (Bois Forte Children's Court Rules, ch. VII, pt. A, § 703(24).) The Band defines an "Indian child" as a child whose mother or father is an "Indian" as stated above. (*Ibid.*)

Notwithstanding the Band's inclusion in the Minnesota Chippewa Tribe, as a federally recognized Indian tribe, the Band's rules for determining the Indian status of the children for ICWA purposes are controlling. (*In re Dependency of A.L.W.* (2001) 108 Wn.App. 664, 670–672 [32 P.3d 297] [rejecting argument the determination of tribal membership was solely within the province of the Minnesota Chippewa Tribe; rather, because the Leech Lake Band of the Minnesota Chippewa Tribe was a federally recognized Indian tribe and had determined that the child was eligible for membership, the trial court erred when it denied the Leech Lake Band's motion for intervention].)

expert, stated there was *"no doubt the children were Indian children* who would be enrolled in the Band" on the completion of "bureaucratic" requirements. (Italics added.) Wright, the Band's Indian child welfare supervisor, averred the proceedings were controlled by ICWA because *the children were eligible or enrolled members of the Band.* Wright testified the tribal court was able to take custody over children before they were enrolled in the Band, and the Band could then complete the enrollment process.

The Band's actions also indicated it considered the children to be Indian children within the meaning of ICWA. The Band promptly intervened in the case as of right. (25 U.S.C. § 1911(c).) Its tribal representative appeared telephonically and testified at the children's hearings. Further, the Band's rules of court state "[t]he Court may, after a hearing upon a written motion or petition filed by the Band or by a parent, guardian or custodian of *a minor child who is either a Band member, eligible for membership, or the child of a Band member*, accept a transfer of jurisdiction of a child protection case from any federal, state or other tribal court, including cases arising under the Indian Child Welfare Act . . . when it is in the best interest of the Band and of the child to accept such a transfer of jurisdiction." (Bois Forte Children's Court Rules, ch. VII, pt. A, § 768, italics added.)[8]

■ The decision whether a child is a member of, or eligible for membership in, the tribe is the sole province of the tribe. (§ 224.3, subd. (c).) A tribe's determination that a child is a member or is eligible for membership in the tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, is conclusive. (§ 224.3, subd. (e)(1).) ■ Thus, when considering the transfer petition, the court should have deferred to the Band's determination of the Indian status of the children, which was conclusive under the Guidelines and state law. (Guidelines, *supra*, § B.1(b)(1); Welf. & Inst. Code, § 224.3, subd. (e)(1); cf. *Montana v. United States* (1981) 450 U.S. 544, 546 [67 L.Ed.2d 493, 101 S.Ct. 1245] [because of the Indian tribes' inherent power to determine tribal membership, their membership determinations are entitled to great deference].) We conclude the court erred when it determined the children were not Indian children as defined in title 25 United States Code section 1903(4) because they were not yet enrolled members of the Band. (Guidelines, *supra*, § B.1; Welf. & Inst. Code, §§ 224, subd. (c), 224.1, subd. (a), 224.3, subd. (e)(1); rule ʼ5.482(c); *U.S. v. Broncheau, supra*, 597 F.2d at p. 1263 [enrollment has not yet been held to be an absolute requirement of federal jurisdiction];

---

[8] On our own motion, we take judicial notice of the Bois Forte Children's Court Rules, a portion of which was admitted in evidence by the trial court and appears in the record. (Evid. Code, § 452, subd. (e).)

*Guardianship of Ashley Elizabeth R.* (1993) 116 N.M. 416 [863 P.2d 451, 455] [lack of registration with a tribe cannot be considered good cause to deny transfer].)

Further, to the extent there was any ambiguity in the children's Indian status, California law imposes procedural protections for nonenrolled Indian children. Section 224.3, subdivision (e)(1) provides "[i]nformation that the child is not enrolled or eligible for enrollment in the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom."

The Band did not confirm in writing that enrollment was a prerequisite for membership under tribal law or custom. To the contrary, Sjogren's letter stated there was "no doubt the children were Indian children who would be enrolled in the Band" when their father's birth certificate was sent to the Minnesota Chippewa Tribe. Wright stated ICWA applied because the children were eligible for membership in the Band. Further, rule 5.482(c)[9] directs the court to proceed as if the child is an Indian child when notice has been provided as required by federal and state law and a tribe responds indicating that the child is eligible for membership if certain steps are followed.

Rule 5.482(c) does not, as the Agency contends, impermissibly expand ICWA beyond its jurisdictional limits. ICWA expressly permits state or federal law to provide a higher standard of protection to the rights of the Indian child and his or her parent or Indian guardian than the protection of rights provided under ICWA. (25 U.S.C. § 1921.) Thus ICWA does not preempt such higher state standards. (*In re S.B., supra,* 130 Cal.App.4th at p. 1158.) Rather, rule 5.482(c) promotes the timely resolution of dependency matters by avoiding protracted litigation concerning the applicability of ICWA. (See *In re Kahlen W., supra,* 233 Cal.App.3d at p. 1425 ["[ICWA] is intended, as is state law, to protect the best interests of the child, and thus timely disposition is paramount."].)

Here the record indicates the court was aware the children would be enrolled in the Band after J.C.'s certified birth certificate was sent to the Minnesota Chippewa Tribe. Thus, to the extent the children's status as Indian

---

[9] "If after notice has been provided as required by federal and state law a tribe responds indicating that the child is eligible for membership if certain steps are followed, the court must proceed as if the child is an Indian child and direct the appropriate individual or agency to provide active efforts under rule 5.484(c) to secure tribal membership for the child." (Rule 5.482(c).)

Rule 5.484(c) states "Efforts to provide services must include pursuit of any steps necessary to secure tribal membership for a child if the child is eligible for membership in a given tribe, as well as attempts to use the available resources of extended family members, the tribe, tribal and other Indian social service agencies, and individual Indian caregivers."

children was not yet clear to the juvenile court, the court should have proceeded as if the children were Indian children when it considered whether to transfer jurisdiction to the tribal court. (Rule 5.482(c).)

We now discuss the parents' contention the court erred when it determined there was good cause to deny the petition to transfer jurisdiction of Jack's custody proceeding to the tribal court.

## III

## TRANSFER OF JURISDICTION

The court found that even if Jack was an Indian child, reunification services had been terminated and therefore the transfer petition was not filed within a reasonable time after notice of "the entirety of the proceedings." The court stated ". . . I don't believe that given where we're at the best interests of the child would ignore the passage of time."

A. *The Legal Framework for Transferring Jurisdiction to the Child's Indian Tribe*

■ ICWA "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation." (*Holyfield, supra,* 490 U.S. at p. 36; see *In re M.M., supra,* 154 Cal.App.4th at p. 907 [ICWA clearly establishes a preference for tribal court jurisdiction in custody proceedings involving Indian children].) In any state court proceeding for foster care or termination of parental rights to an Indian child who is not domiciled or residing within the reservation of his or her tribe, the state court, in the absence of good cause to the contrary, is required to transfer the proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe. The transfer is subject to declination by the tribal court of the Indian child's tribe. (25 U.S.C. § 1911(b); Welf. & Inst. Code, § 305.5, subd. (b).)

The California Legislature has specifically defined the circumstances that constitute or may constitute "good cause" to deny transferring jurisdiction to the tribal court.[10] The court is required to find good cause to deny a transfer petition if one or both of the child's parents object to the transfer, the child's tribe does not have a "tribal court" as defined in title 25 United States Code

---

[10] ICWA does not define "good cause." (See 25 U.S.C. § 1911(b).) However, the Guidelines contain extensive commentary on what constitutes good cause to deny transfer to the tribal court. (See Guidelines, *supra,* § C.)

section 1903, or the tribal court declines the transfer. (§ 305.5, subd. (c)(1); rule 5.483(b).) The court *may* find good cause not to transfer the proceeding if:

"(A) The evidence necessary to decide the case cannot be presented in the tribal court without undue hardship to the parties or the witnesses, and the tribal court is unable to mitigate the hardship by making arrangements to receive and consider the evidence or testimony by use of remote communication, by hearing the evidence or testimony at a location convenient to the parties or witnesses, or by use of other means permitted in the tribal court's rules of evidence or discovery.

"(B) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition within a reasonable time after receiving notice of the proceeding, provided the notice complied with Section 224.2. It shall not, in and of itself, be considered an unreasonable delay for a party to wait until reunification efforts have failed and reunification services have been terminated before filing a petition to transfer.

"(C) The Indian child is over 12 years of age and objects to the transfer.

"(D) The parents of the child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe." (§ 305.5, subd. (c)(2); see rule 5.483(d).)

If it appears there is good cause to deny a transfer, the court must hold an evidentiary hearing on the transfer and make its findings on the record. (Rule 5.483(d)(3).) The court may not consider socioeconomic conditions and the perceived adequacy of tribal social services, tribal probation, or the tribal judicial system in its determination that good cause exists to deny a request to transfer to a tribal court with concurrent state and tribal jurisdiction. (Rule 5.483(e).)

The burden of establishing good cause to deny a request to transfer is on the party opposing the transfer. (§ 305.5, subd. (c)(4); rule 5.483(f)(1).) If the court believes, or any party asserts, that good cause to deny the request exists, the reasons for that belief or assertion must be stated in writing, in advance of the hearing, and made available to all parties who are requesting the transfer, and the petitioner must have the opportunity to provide information or evidence in rebuttal of the belief or assertion. (§ 305.5, subd. (c)(4); rule 5.483(f)(2).)

A transfer of jurisdiction to the Indian child's tribe by the state court is subject to declination by the tribe. (25 U.S.C. § 1911(b); § 305.5, subd. (b).) Here, the Bois Forte Children's Court Rules state the tribal court may, after a

hearing, accept a transfer of jurisdiction of a child protection case from any federal, state or other tribal court when it is in the best interest[11] of the Band and the child to accept such a transfer of jurisdiction. (Bois Forte Children's Court Rules, ch. VII, pt. H, § 762.)

### B. *The Transfer Petition Was Timely Filed*

The court denied the transfer on the ground the petition was not filed within a reasonable time after "notice of the entirety of these proceedings." The court said it could not ignore the passage of time considering the best interests of the child, and the law did not require the court to wait until reunification services had been terminated to file the petition to transfer. In making these findings, the court disregarded the plain language of section 305.5, subdivision (c)(2)(B) and thus abused its discretion. (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301 [4 Cal.Rptr.3d 629] [abuse of discretion occurs when the trial court misinterprets the law].)

■ Section 305.5, subdivision (c)(2)(B) allows the court to find good cause to deny the transfer when (1) the child custody proceeding was at an advanced stage when the petition to transfer was received *and* (2) the petitioner did not file the petition within a reasonable time after receiving notice of the proceeding, provided the notice complied with state notice requirements under section 224.2. Section 305.5 explicitly states it is not unreasonable, in and of itself, for a party to delay filing a transfer petition until reunification efforts have failed and reunification services have been terminated. (§ 305.5, subd. (c)(2)(B).)

Contrary to the trial court's interpretation of the statute, the time of filing a transfer petition is not tolled from notice of the "entirety of the proceedings," but from notice made in compliance with section 224.2. Such notice includes the right of the child's parents, Indian custodians and tribe to petition the court to transfer the proceeding to the tribal court of the Indian child's tribe. (§ 224.2, subd. (a)(5)(G)(ii).) Thus we conclude the trial court erred when it

---

[11] The Band's Children's Court Rules define an analysis of "best interests of the child" to include consideration of "the ability of the tribe and the reservation community to provide for the care of the child; the wishes of the tribe, parents, party or parties; the preference of the child if the child is of sufficient age to express a preference; the child's adjustment to home, school and tribal community; the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; the permanence, as a family unit, of the existing or proposed adoptive home; the mental and physical health of all individuals involved; the capacity and disposition of the parties to give the child love, affection, guidance and to continue educating the child in the child's tribal culture and heritage." (Bois Forte Children's Court Rules, ch. VII, pt. A, § 703(4).)

found that the petition was not timely filed because of the length of time of the dependency proceedings and the fact reunification services had been terminated.

Here, the record shows the Band received notice of the children's dependency proceedings in compliance with section 224.2 on August 10, 2009. The Band determined the children were eligible for enrollment and notified the court of its intent to intervene in the proceedings. J.C. filed the transfer petition approximately one month later. Thus the transfer petition was timely filed. There was no evidence J.C. delayed filing the petition to disrupt the proceedings. (See Guidelines, *supra*, § C.1 [timeliness exception to transfer may be used to prevent disruption caused by negligence or obstructionist tactics by counsel].) As we have discussed, the fact reunification services had been terminated in Jack's case did not, in and of itself, constitute good cause to deny the transfer petition. (§ 305.5, subd. (c)(2)(B); rule 5.483(d).)

■■■ The Agency argues the court properly considered Jack's best interest in determining whether there was good cause to deny the transfer petition. We need not address this issue here. The trial court found that it was in Jack's best interest to deny transfer because of "the passage of time." As discussed, section 305.5, subdivision (c)(2)(B) states that the postreunification status of a child custody proceeding does not, in and of itself, establish good cause to deny transfer. Thus, to the extent transfer of jurisdiction under California's dependency framework includes a determination by the state court of the child's best interest, a determination based merely on the passage of time would impermissibly contravene an express statutory provision to the contrary. (See *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 844 [69 Cal.Rptr.3d 96, 172 P.3d 402] [the text of the statute is the best indicator of legislative intent]; *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723]; *Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1619 [39 Cal.Rptr.2d 806] [where the Legislature has prescribed the meaning to be given to a precise term used in a statute, that meaning is generally binding on the courts].)

We conclude the court erred when it found good cause to deny the transfer petition under section 305.5, subdivision (c)(2)(B).

### C. *Inconvenient Forum*

In denying the transfer petition, the court incorporated county counsel's argument that transferring jurisdiction to the Band would create an undue hardship for the parties and impede the presentation of evidence necessary to determine the best outcome for Jack.

■■■ The court may find good cause to deny transfer if (1) the evidence necessary to decide the case cannot be presented in the tribal court without

undue hardship to the parties or the witnesses *and* (2) the tribal court is unable to mitigate the hardship by making other arrangements to receive and consider the evidence or testimony. (§ 305.5, subd. (c)(2)(A).)

Although there is substantial evidence to support a finding under the first prong of section 305.5, subdivision (c)(2)(A),[12] the parties opposing transfer did not present any evidence to show the tribal court was unable to mitigate the hardship by making other arrangements to hear evidence. Further, the record does not contain any evidence from which we could reasonably infer the tribal court was unable to "[make] arrangements to receive and consider the evidence or testimony by use of remote communication, by hearing the evidence or testimony at a location convenient to the parties or witnesses, or by use of other means permitted in the tribal court's rules of evidence or discovery." (§ 305.5, subd. (c)(2)(A).) Thus we cannot sustain the finding there is good cause to deny transfer to the tribal court under the inconvenient forum exception.

IV

### THE COURT ERRED WHEN IT DID NOT HOLD A HEARING ON THE TRANSFER PETITION IN ELIZABETH'S AND ANDREW'S CASES

The parents argue the court was required to grant them a hearing on the transfer petition in the siblings' cases. (Rule 5.483(d)(3) ["If it appears that there is good cause to deny a transfer, the court must hold an evidentiary hearing on the transfer and make its findings on the record."].)

The Agency acknowledges the court did not hold a transfer hearing in the siblings' cases. It contends the court denied the transfer petition for all three

---

[12] The Guidelines provide the court may deny a transfer of jurisdiction to the tribal court on a showing the "evidence necessary to decide the cause could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses." (Guidelines, *supra*, § C.3.) Courts interpreting this provision, which mirrors the first prong of section 305.5, subdivision (c)(2)(A), have held that sheer distance from the tribal court creates undue hardship to the parties and witnesses. (*In re Guardianship of J.C.D.* (2004) 2004 SD 96 [686 N.W.2d 647, 650] [under ICWA, generally courts have denied transfer where very long distances exist between the parties and the tribal court]; *In Interest of J.R.H.* (Iowa 1984) 358 N.W.2d 311, 317 [good cause to deny transfer of the proceedings may arise from geographical obstacles]; *In the Interest of J.W., supra*, 528 N.W.2d at p. 661 [good cause to deny transfer to out-of-state tribe exists where bulk of evidence was located in state and majority of the witnesses and parties lived in state].)

Here the tribal court was located in northern Minnesota. Most of the parties and witnesses lived in San Diego. We infer from the distance alone the evidence necessary to decide the case could not be presented in the tribal court without undue hardship to the parties or the witnesses. (§ 305.5, subd. (c)(2)(A).)

children at Jack's hearing on March 19, 2010, and argues the parents have lost their right to appeal because they did not file timely notices of appeal in the siblings' cases after the March 19 hearing.

The record does not support the Agency's contention. The March 19 hearing was a section 366.26 hearing in Jack's case and the court made findings on the transfer petition only as to Jack. Further, even if the court denied the transfer petition as to all three children on March 19, 2010, the parents' appeals were timely filed. The disposition hearing is the first hearing from which a party may appeal. (§ 395; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196 [23 Cal.Rptr.2d 482] [the dispositional order is the first appealable order in the dependency process].) The siblings' disposition hearings were held on June 2. The parents filed timely notices of appeal from the orders made at those hearings on June 8 and July 21, respectively. (Rule 5.585 [notice of appeal must be filed within 60 days after the making of an appealable order].)

Rule 5.483(d)(3) provides if it appears there is good cause to deny a transfer, the court must hold an evidentiary hearing. The reasons for any belief or assertion there is good cause to deny transfer must be stated in writing and provided to all parties who are petitioning for the transfer. (§ 305.5, subd. (c)(4).) These requirements were not met in the siblings' cases.

V

THE ERROR IS JURISDICTONAL

The Agency argues because the tribal representative concurred in the children's placements, any error is harmless. We disagree. The issues raised on appeal concern the jurisdictional heart of ICWA—the tribal court's presumptive jurisdiction over custody proceedings involving Indian children. (*Holyfield, supra,* 490 U.S. at p. 36.) The issue is not the outcome of the custody decision but who makes that decision. (*Id.* at p. 53; *In re A.B.* (2003) 2003 ND 98 [663 N.W.2d 625, 633–634] [the threshold question is the proper forum for the child custody decision].) Thus, in the absence of good cause to deny a petition to transfer jurisdiction to the Indian tribe, subject to the tribe's right of declination, the court acted in excess of its jurisdiction when it terminated parental rights to Jack,[13] violating a comprehensive state and federal statutory scheme and offending public policy. (*In re Andres G., supra,* 64 Cal.App.4th at p. 482.)

---

[13] The parents do not contend the dispositional orders in Elizabeth's and Jack's cases should be reversed. (*In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285] [an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by waiver, estoppel or the passage of time].)

## DISPOSITION

In *In re Jack C., III*, D057034, the order terminating parental rights is reversed, and the matter is remanded to the trial court with directions to transfer jurisdiction to the Bois Forte Band of Chippewa, subject to the Band's right of declination. If the Band declines jurisdiction, the juvenile court shall then reinstate the order terminating parental rights. (Cf. *In re Francisco W.* (2006) 139 Cal.App.4th 695, 706 [43 Cal.Rptr.3d 171] [limited reversal disposition in defective ICWA notice appeals is in keeping with the public policy of our child dependency scheme, which favors prompt resolution of cases].)

In *In re Elizabeth P.*, D057499, the matter is remanded to the trial court with directions to hold a hearing on the transfer petition if it appears there is good cause to deny a transfer. (Cal. Rules of Court, rule 5.483(d)(3).)

Haller, J., and Irion, J., concurred.

A petition for a rehearing was denied March 14, 2011, and respondent's petition for review by the Supreme Court was denied May 11, 2011, S191805.