Filed 9/30/13  In re T.T. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re T.T. et al., Persons Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>        Defendant and Appellant. | A137578<br><br>(Humboldt County<br>Super. Ct. No. JV0900711, JV0900712) |

        T.T. and C.T. (Minors) are the children of appellant (Father) and A.B. (Mother).  In a previous appeal, we concluded the inquiry and notice under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA; see also Welf. & Inst. Code,[1] §§ 224 et seq.) were inadequate.  (*In re Tamara T.* (July 19, 2012, A132508 [nonpub. opn.] (*Tamara T.*).)  We accordingly remanded the matter to the juvenile court to allow the Humboldt County Department of Health & Human Services (the Department) to conduct further inquiry and provide corrected ICWA notice.  After further inquiry and notice, the juvenile court found that proper notice had been given and that ICWA did not apply.  In

---

        [1] All undesignated statutory references are to the Welfare and Institutions Code.

1

this appeal, Father contends the ICWA inquiry and notice were once again inadequate. We shall affirm the order.

## I. BACKGROUND[2]

The relevant background of this matter through December 13, 2010 is described in detail in our decision in *Tamara T.*, and we will not repeat it here except as necessary to understand the issues now before us. In brief, the juvenile court assumed jurisdiction of Minors in 2010. In response to the Department's ICWA inquiry, Mother did not report any Indian ancestry, but Father apparently did report such ancestry. The Department provided notice to certain Indian tribes—the Bear River Band/Rohnerville Rancheria, the Blue Lake Rancheria, and the Wiyot tribes, as well as the Bureau of Indian Affairs—indicating T.T. might have Indian ancestry though Father. The information provided was incomplete, in that it lacked the former and current addresses and birthdate of Father's mother, through whom he claimed Indian ancestry, and contained no information about her family. Although C.T. had been placed with the children's paternal aunt, there was no indication the Department inquired of her whether she had any further information about Father's mother or grandparents. We concluded that "[i]n light of the scant information provided by Father—and the clear directive of California Rules of Court 5.481(a)(4) that if the social worker has reason to know that an Indian child 'may be involved,' the social worker 'must make further inquiry' by interviewing, among others, ' "extended family members" as defined in 25 United States Code section[] . . . 1903(2)'— . . . the Department did not meet its obligation of inquiry under ICWA." (Fn. omitted.) We accordingly remanded the matter to the juvenile court on July 19, 2012, "with directions to order the Department to obtain complete and accurate information about the children's paternal relatives and to provide corrected ICWA notice to the relevant tribes."

---

[2] Our recitation of the facts is limited to those necessary to understand the issues before us in this appeal, which are limited to compliance with ICWA.

Father filed an amendment to his "Parental Notification of Indian Status" (ICWA-020) on March 13, 2012. The amended form stated his maternal great-grandmother was a full-blooded Wailaki, and that Father believed he might be associated with the Covelo Round Valley Indian Tribe and the Bear River Band of the Rohnerville Rancheria. The notification provided the names of the maternal great-great-grandmother (Ella P.) and of her son, Bob P., the maiden and married name of Bob P.'s daughter (Father's grandmother) Shari, and the name of Shari's daughter (Father's mother), Toni, with two last names, one in parentheses, presumably her maiden and married names. It also provided the names of Father's two sisters, Tasha T. and Katrina J.[3]

An amended ICWA notice was sent to the Bear River Band of the Rohnerville Rancheria, the Round Valley Reservation, the Grindstone Rancheria, the Scotts Valley Rancheria, the Secretary of the Interior, and the Bureau of Indian Affairs in May 2012. The notice provided the names of Father's mother Toni and his grandmother Shari. It listed, apparently inaccurately, Ella P. as Father's other grandmother and Robert P. as his grandfather.

A second amended ICWA notice was sent in June or July of 2012. The second amended notice provided both last names of Father's mother Toni, and listed the correct family relationships for Robert P. and Ella P.

The Grindstone Rancheria, the Round Valley Reservation, and the Scotts Valley Rancheria informed the Department that Minors were not eligible for membership. After receiving the first amended ICWA notice, the Bear River Band of the Rohnerville Rancheria had also indicated Minors were not eligible for membership. As of July 2012, the Department was still awaiting the Bear River Band's response to the second amended notice.

Father filed a second amendment to his "Parental Notification of Indian Status" on August 20, 2012. An attachment provided additional family history, including names of

---

[3] According to a report later filed by the Department, Father's two sisters, Tasha T. and Katrina J., were "from the paternal side of the family were [*sic*] there is no known Native American ancestry."

his parents, some of his grandparents, great-grandparents, great-great-grandparents, and some of their siblings, along with some of their dates of birth and death and the cities or states where they lived. The attachment stated Father's grandfather James H. was Comanche, that his great-grandmother Lilly Mae H. was raised on a reservation and might have Cherokee or Comanche ancestry, that his great-grandfather Robert P. attended an Indian school and had a brother, Buck P., who was "registered and lived on a federal trust land, reservation, or Rancheria," and that Robert's mother, Erma P. (Father's great-great-grandmother), had parents who were Wailaki and Mattole. On another page, it stated that Erma P. was full-blooded Wailaki, and that Father believed he might be associated with the Covelo Round Valley Indian Tribe and the Bear River Band of the Rohnerville Rancheria. All of the claimed Indian ancestry was on the maternal side of Father's family.

The Department sent a third amended ICWA-030 notice on August 28, 2012, to the Bear River Band, the three federally recognized Cherokee tribes (the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee),[4] the Comanche Nation, the Grindstone Rancheria, the Round Valley Reservation, the Scotts Valley Rancheria, the Bureau of Indian Affairs, and the Department of the Interior. The notice gave both last names of Father's mother, and listed the tribes of which she might be a member, including the Bear River Band/Rohnerville Rancheria, Blue Lake Rancheria, Wiyot Tribe, Cherokee Nation, Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee, and the Comanche Nation. It listed Father's grandmother Sharon, gave her three last names, noted she was also known as Shari, and indicated she had ancestry in the three Cherokee tribes and in the Comanche Nation; listed his great-grandmother Pauline, and indicated she was connected with or a member of the Round Valley Reservation, Wailaki; the Grindstone Rancheria, Wailaki; and the Scotts Valley Rancheria, Wailaki. It provided the name of Father's grandfather James H. and listed the Cherokee tribes and Comanche

---

[4] See *In re C.D.* (2003) 110 Cal.App.4th 214, 226 & fn. 18.

4

Nation as his affiliations; it also provided the name of his great-grandfather Robert P., and listed the Grindstone Rancheria, Wailaki; the Round Valley Reservation, Wailaki; the Scotts Valley Rancheria, Wailaki; and the Bear River Band/Rohnerville Rancheria and Mattole as his affiliations. The form indicated Father's great-great-grandmother Lilly Mae H. and his great-uncle Buck P. had lived on a federal trust land, reservation, or Rancheria, and noted the "Creek Nation" as the location for Lilly Mae's residence.[5] The form listed various of Father's great-grandparents, great-great-grandparents, an aunt, an uncle, great-aunts, and a great-uncle with tribal affiliations in the above-mentioned tribes. This portion of the form stated, incorrectly, that the birthday of Father's great-great-grandfather Troy H. was in 1961, and that his great-grandfather William (Troy's son) was born in 1859. It included two handwritten family trees. These family trees indicated that William was born in 1914.

In an ICWA status report dated October 30, 2012, the Department reported that a social worker had conducted telephone calls with Father, the Round Valley Tribe, and the Bear River Rancheria, and had spent "numerous hours researching the family through ancestry.com, archives.gov, and census reports." The Bear River Rancheria enrollment department told her that to be a tribal member, a person must be able to prove descent from one of the original 13 families listed on the tribe's rolls in 1910, and that Father's family names were not linked to those families. The Round Valley Rancheria also told her that Father's ancestor who claimed Round Valley heritage, Robert P., was not an enrolled member, and that Minors were not members of the tribe.[6] The Bear River Band

---

[5] Elsewhere on the form, Lilly was identified as a member of one of the Cherokee tribes or the Comanche Nation.

[6] The attachments included a September 17, 2012 letter from the ICWA assistant for the Round Valley Indian Tribes, who told the Department that she had found Minors could possibly be lineal descendents of those listed in the tribe's original allotment book, the census book, or membership book of the Round Valley Indian Tribes, but that the date of birth of the paternal great-grandfather needed to be verified. The letter continued that for the children to become tribal members, their parents would need to fill out an application, if possible, and the enrollment clerk would need to see documentation, including birth certificates "all the way up to the member listed on the membership

of Rohnerville Rancheria, the Grindstone Rancheria, the three Cherokee tribes, and the Comanche Nation also informed the Department that Minors were not eligible for membership or that Minors could not be traced in their tribal records. It appears that the Scotts Valley Rancheria did not respond to the third ICWA notice.

On November 15, 2012, the juvenile court found the Department had made proper inquiry, that notice had been provided, that while the children had Native American heritage, they were not eligible for enrollment in any tribe, and that ICWA did not apply to either of the children.

## II. DISCUSSION

### A. Legal Background

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. [Citations.] If there is reason to believe a child that is the subject of a dependency proceeding is an Indian child, ICWA requires that the child's Indian tribe be notified of the proceeding and its right to intervene. [Citations.] [¶] . . . [¶] [F]ederal and state law require that the notice sent to the potentially concerned tribes include 'available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data.' [Citations.] To fulfill its responsibility, the Agency has an affirmative and continuing duty to inquire about, and if possible obtain, this information. [Citations.] Thus, a social worker who knows or has reason to know the child is Indian 'is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and

book." An October 19, 2012 letter from the same ICWA assistant stated that the tribe had concluded its search on the paternal great-grandfather, and that his approximate date of birth did not match the tribes' records. The letter stated the tribe had also researched the alternative last name of Erma P. to no avail. Therefore, Minors were not members of the tribe.

extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2 . . . .' (§ 224.3, subd. (c).) That information '*shall* include' '[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known.' (§ 224.2, subd. (a)(5)C).) Because of their critical importance, ICWA's notice requirements are strictly construed." (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1396–1397; see also *In re I.W.* (2009) 180 Cal.App.4th 1517, 1529–1530.)

## B. Adequacy of ICWA Inquiry and Notice

Father contends the juvenile court failed to ensure that the Department carried out adequate ICWA notice and inquiry.

### 1. *Minors' Relatives*

Father had two sisters, Tasha T. and Katrina J., who were not listed on the family trees or the ICWA-030 forms mailed in July or August of 2012. Father contends the ICWA notice was therefore incomplete. Where notice has been received by a tribe, "errors or omissions in the notice are reviewed under the harmless error standard." (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.) Under the facts of this case, we can conclude with confidence that any error in the omission was harmless. The record indicates Tasha T. and Katrina J. were from the paternal side of Father's family, from which he does not claim any Indian ancestry. Thus, there is no basis to conclude that the information about Tasha T. and Katrina J. was relevant to the tribes' inquiry, or that the outcome would have been different if their names had been included on the notices. (See *id.* at p. 577.)

Father also contends the Department's inquiry was inadequate in a variety of ways. He argues there is no indication the Department contacted Tasha T. and Katrina J. or asked them about the children's Indian heritage; that there is no indication the Department contacted a great-aunt, Ruby, or the daughter of the brother of Father's great-grandfather, Ramona (Father's first cousin twice removed), whom Father had listed in his

7

August 2012 attachment to the ICWA-020 form; and that the Department did not seek contact information for a paternal aunt and uncle after the social worker found their numbers had been disconnected. Thus, he contends, the inquiry did not comply with our directive in *Tamara T.* that the Department "obtain complete and accurate information about the children's paternal relatives." We reject the contention that these omissions rendered the inquiry inadequate. There is no basis to conclude Father's non-Indian relatives would have provided information unavailable to his Indian relatives. Nor, in the context of this case and the extensive information already available to the Department, do we see any requirement that the Department make further inquiry of the other relatives.

We likewise reject the argument that the notice to the tribes was inadequate because it did not include information the social worker learned through her own research, including the facts that Minors' great-great-great-grandmother Erma P. was listed on a 1990 census as a Mattole Indian; that Erma's parents and grandparents were Wailaki or Mattole; that Minors' great-great-great-grandfather's brother's grandson was enrolled in the Wailaki or Round Valley tribe; and the dates of birth and death of some of these relatives. The information the tribes received indicated Erma P. was Wailaki or Mattole, and Father has drawn our attention to no authority suggesting ICWA notice must include information about relatives five, six, and seven generations removed from the minors. (See *In re J.M.* (2012) 206 Cal.App.4th 375, 381 [ICWA notice normally not required to include information about ancestors more remote than child's great-grandparents].)[7] For the same reason, there was no ICWA violation in the notice's failure to provide information about the residence of Minors' great-great-grandfather, Robert P. and his brother Buck. Nor do we see prejudice in the Department's failure to list the names of two sisters of Minors' great-grandmother Shari, since the notice given to the

[7] The recent case of *In re S.E.* (2013) 217 Cal.App.4th 610, 615–617, remanded a case to the juvenile court where the ICWA notice had entirely omitted the name of the minor's great-great-grandfather, whom the child's mother and grandmother affirmatively claimed was Indian. Here, on the other hand, the notice included the name and tribal affiliation of Minors' great-great-great-grandparents, Erma P. and Victor P.

tribes included the names of Shari, her two parents, and her paternal grandparents through whom she had Wailaki or Mattole heritage.

   2. *Relevant Tribes*

Father argues the Department failed to send notice to two tribes, the Creek Nation and the Hualapai tribe.

The third amended ICWA-030 notice reported that Father's great-great-grandmother, Lilly Mae H., had lived on a federal trust land, reservation, rancheria, or allotment of the Creek Nation. Elsewhere in the form, Lilly Mae H. was reported to have possible heritage from the Comanche Nation and the three Cherokee tribes. Although the Department stated in a report to the court that the notice had been sent to the Creek Nation, the Creek Nation was in fact not sent notice. It appears from the record, however, that the reference to Lilly Mae H. having possible Creek heritage may have been erroneous. In his amended ICWA-020 form, Father reported that Lilly Mae H. "was raised on a reservation and might have ancestry with the Cherokee or Comanche." There is no suggestion that any other relatives claimed affiliation with the Creek Nation. In any case, ICWA normally requires the Department to inquire into and give notice of the Indian child's relatives up to the level of great-grandparents. (*In re A.G.*, *supra*, 204 Cal.App.4th at p. 1396.) Lilly Mae H. was Minors' great-great-great-grandmother, two generations removed from that level. Even if the Department provided incomplete information about her tribal affiliation, we find no ICWA violation.[8]

In an entirely frivolous argument, Father also contends the County Counsel informed the court that the "Hualapai" and "Mattole" tribes had been provided notice, whereas in fact the Hualapai tribe never received ICWA notice. Nothing in the record suggests Father had "Hualapai" heritage. Rather, he claimed descent from a tribe with a

---

[8] Trying to have it both ways, Father also complains that the ICWA-030 form stated Lilly Mae H. had lived on property that was part of the Creek Nation, although Father had in fact reported she might have Cherokee or Comanche ancestry. Suffice it to say that the notice also indicated Lilly Mae had possible Cherokee and Comanche heritage, and there was no prejudice.

9

similar sounding name, the Wailaki; he stated that Erma P.'s parents were "Wailaki or Mattole." It seems likely that either County Counsel mispronounced the tribe's name or that the court reporter transcribed it incorrectly. In any case, in the absence of any indication whatsoever that Father had Hualapai heritage, there was no ICWA violation in failing to provide notice to the tribe.

Father also contends the Department should have sent its August 2012 notice to the Wiyot tribe and the Blue Lake Rancheria. It appears that in 2010, at the time of the original ICWA notices, the Department believed Father might have heritage from these two tribes. The detailed information Father provided in 2012, however, makes no mention of these groups, instead indicating that he might be associated with the Wailaki, Mattole, Round Valley, Cherokee, and Comanche tribes and the Bear River Band of the Rohnerville Rancheria. Nor did the social worker's research disclose any ancestry from the Wiyot tribe or Blue Lake Rancheria. On appeal, Father makes no affirmative representation of Wiyot or Blue Lake heritage in his briefing to this court. (See *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [no prejudice where appealing parent does not affirmatively represent Indian heritage].) In the circumstances, we find no reversible error.

　　3. *Family Tree*

The August 2012 ICWA-030 notice included handwritten family trees for Father's family. A more detailed, typed, family tree was attached to the Department's ICWA status report prepared for the November 2012 ICWA hearing, but was not included in any notice to the tribes. In attaching the typed family tree, the report stated: "[The social worker] completed a family tree (attachment #17) and sent a 3rd Amended ICWA-030 to the appropriate tribes, which was filed with the Court 08/29/2012." Father contends the Department thus suggested to the court, incorrectly, that the tribes had received the more detailed typed family tree. Moreover, he argues the response of the Cherokee Nation to the ICWA notice showed the omission was material: its response listed Minors' relatives, noted that the dates of birth of some of Minors' ancestors were unknown, stated the children could not be traced to the tribal records based on the information provided,

and continued: "This determination is based on the above listed information exactly as provided by you. Any incorrect or omitted family documentation could invalidate this determination." As Father points out, the dates of birth of three of the ancestors the tribes had mentioned—Minors' great-great-grandmother Pauline M., great-great-grandfather Robert P., and great-great-great-grandfather Victor P.—appear on the typed family tree but are missing on the handwritten family tree the tribes received. However, in seeking information on these ancestors, the Department went beyond the requirements of ICWA, which normally extends to inquiry and notice of great-grandparents. Moreover, these relatives were not omitted from the notice; rather the tribes were informed of their names, their relationship to Minors, and their possible tribal affiliations. In the circumstances, we will not reverse based on incomplete notice of such remote relatives.

### 4. *Minor Errors and Omissions in Notice*

Father points out various other errors and omissions in the third amended notice to the tribes, and contends that as a result the Department did not comply with our directive to obtain complete and accurate information about Minors' paternal relatives. On one page of the notice, two letters in the last name of Father's grandmother (a name she shared with Father) were transposed. The notice correctly stated the date Father had provided for his grandfather's birth, but reported the wrong year of his death. The notice omitted the name of Father's uncle. It included both maiden and married names for some of Father's female relatives, but did not specify which name was which, and, as to one of those relatives (Father's mother), the handwritten family tree provided to the tribes did not include the married name. The notice listed both maiden and married names of Minors' great-great-great-aunt, Ivy Pearl, as well as her dates of birth and death, but only her married name was included in one page of the handwritten family tree provided to the tribes (although it was included on another page). The maiden names of Ivy Pearl's sisters Minnie and Peggy were similarly included in the notice but omitted from the family tree; the city in which Ivy Pearl lived, Fortuna, was listed as "Fort" on one page of the family tree and otherwise omitted from the notice. The notice included the dates of birth and death of Minors' great-great-great-uncle Troy, but the dates were omitted from

the family tree, as was the full name of his son.  The notice spelled the name of Father's great-great-grandmother Lilly Mae H. correctly, but the family trees misspelled it as Lily Me H.  These contentions are so trivial as to cross the line into frivolousness.  Neither individually nor cumulatively do they require reversal.

     *5. Minors' Eligibility for Tribal Enrollment*

Based largely on these asserted ICWA defects, Father contends the Department claimed inaccurately that, because none of their ancestors were enrolled tribal members, Minors were not eligible for enrollment in any of the tribes that had been provided notice. In light of our conclusion that the Department's inquiry and notice to the tribes was adequate, we reject this contention.

## C. **Claimed Legal Errors**

Father argues the juvenile court made a number of misstatements of law and fact at the ICWA hearings, and that these errors require reversal.  We will summarize these asserted misstatements briefly.

The trial court expressed the view that ICWA applies where children or parents are *enrolled in* Indian tribes.  It stated that Father would have "worked hard to get enrolled somewhere" if he wanted the benefits of tribal membership, and went on to suggest that where there was no indication of enrollment or eligibility for enrollment "really a whole lot more [does not need] to be done."  As Father points out, a person may be an Indian child for purposes of ICWA without being formally enrolled in a tribe.  (See *In re Jack C.* (2011) 192 Cal.App.4th 967, 977–978.)  Father also contends these statements improperly suggested he—rather than the Department—had the duty to inquire into his Indian status and provide ICWA notice.

The court indicated that it appeared Minors were at most 1/32 Indian, and that the tribes required a greater percentage of Indian ancestry for membership; as Father points out, the record does not support the statement that the relevant tribes all had such a requirement.

Father also challenges the court's statement that "when the tribes were asked directly, they have said that these children are not eligible for enrollment."  According to

12

Father, this statement was inaccurate because the Cherokee Nation actually said it could not trace the children in its tribal records based on the information the Department had provided—information Father contends was incomplete, but which we have already concluded was adequate.

Finally, Father contends the juvenile court misunderstood our remand order in the *Tamara T.* appeal.

Nothing in the challenged statements persuades us to reverse the juvenile court's order. Whatever the court's understanding of the membership requirements of the various tribes, Father has not shown that the Department's ICWA inquiry or notice to the tribes was inadequate, and no tribe indicated Minors were members or eligible for membership. The juvenile court properly found, based on the record before it, that Minors were not Indian children for purposes of ICWA.

## III.  DISPOSITION

The order appealed from is affirmed.


_____
Rivera, J.


We concur:


_____
Ruvolo, P.J.

_____
Reardon, J.

13