Filed 9/24/14 Unmodified opinion attached

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E060554 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1200541) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| M.P. et al., | |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The petitions for rehearing are denied. The opinion filed in this matter on

September 11, 2014, is modified as follows:

1.     In the "**FACTUAL AND PROCEDURAL HISTORY**" section, at page

5, the section entitled "D". <u>SIX-MONTH REVIEW</u>," is modified to read as follows:

1

D.    SIX-MONTH REVIEW

J.S.'s six-month case review took place on July 17.  At the hearing, the juvenile court again found J.S. was not an Indian child and ICWA did not apply in the case.  On October 4, the court granted Great-aunt de facto parent status.  On November 15, the Department filed a request to change a court order.  The Department requested the court schedule a hearing to terminate Mother's and Father's parental rights, because Mother and Father agreed to allow J.S. to be adopted by Great-aunt.  A letter attached to the written request reflected Mother and Father wanted Great-aunt to adopt J.S.; the letter was signed by Mother and Father.[1]

2.    In the "**DISCUSSION**" section, starting on page 13, the section entitled "D.  ACTIVE EFFORTS," is modified to read as follows:

D.    ACTIVE EFFORTS

Although not cited in Mother's and Father's Appellants' Opening Briefs, the Department, in its Respondent's Brief, raises California Rules of Court, rule 5.482(c), and asserts the judgment should be affirmed despite the rule, due to case law.  The Department relies on one case in particular, *In re Abbigail A.* (2014) 226 Cal.App.4th 1450, review granted September 10, 2014, S220187.  After the Department submitted its briefing at this court, the Supreme Court granted review in *Abbigail A.*  Due to review being granted, we cannot cite to the intermediate appellate court's *Abbigail A.*

---

[1] Mother and Father assert the letter was not a legal relinquishment because when Mother and Father agreed to free J.S. for adoption, (1) they did so in a letter rather than on the required forms, and (2) no record was made of Mother and Father being given the required advisements concerning relinquishment.  (Fam. Code, § 8700.)

opinion as authority.  (Cal. Rules of Court, rule 8.1105(e)(1).)  Therefore, we will address the issue without further reference to *Abbigail A.*

California Rules of Court, rule 5.482(c) provides, "If after notice has been provided as required by federal and state law a tribe responds indicating that the child is eligible for membership if certain steps are followed, the court must proceed as if the child is an Indian child and direct the appropriate individual or agency to provide active efforts under rule 5.484(c) to secure tribal membership for the child."

Father, in his Appellant's Opening Brief, argued, within his "notice and inquiry" contention, "the application for membership was never completed."  For the sake of thoroughly addressing the issues raised by Father and the Department, we will address the ICWA issue in light of California Rules of Court, rules 5.484(c) and 5.482(c).  In particular, the issue is whether California Rules of Court, rules 5.484 and 5.482 require the dependency court to apply ICWA to a child who is eligible for tribal membership, although the child is not formally enrolled in the tribe.  This issue is currently pending in our Supreme Court.  (*In re Abbigail A.*, *supra*.)

California law reflects it has adopted the federal definition of the term "Indian child."  (§ 224.1, subd. (a).)[2]  The federal (and California adopted) definition limits the term "Indian child" to children who are tribal members or are children of tribal

---

[2]  For reference, section 224.1, subdivision (a), provides, "As used in this division, unless the context requires otherwise, the terms 'Indian,' 'Indian child,' 'Indian child's tribe,' 'Indian custodian,' 'Indian tribe,' 'reservation,' and 'tribal court' shall be defined as provided in Section 1903 of the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.)."

members. (25 U.S.C.A. § 1903(4).)[3] There is nothing in the statute indicating that states may expand upon the definition. (*State ex re. State Office for Services to Children and Families v. Klamath Tribe* (Or. Ct. App. 2000) 170 Or.App. 106, 114 ["Indian child" definition is not a minimum standard].) Further, a state's right to provide greater ICWA protections would not have any bearing on the definition of "Indian child," because the term does not appear in the subchapter of the code wherein states are granted the authority to provide a higher level of protection. (25 U.S.C.A. § 1921 [referencing 25 U.S.C. § 1911 et seq.].)

California Rules of Court, rule 5.482(c) improperly expanded the definition of Indian child to include children eligible for membership, who did not have a parent who was a tribal member. Thus, California Rules of Court, rule 5.482(c) is improper, because it made ICWA applicable to children who do not meet the state Legislature's adopted definition of "Indian child." The Rule of Court creates a new class of people eligible for ICWA protections; therefore, it is inconsistent with the state law, which does not indicate the definition may be expanded. (§ 224.1, subd. (a) & Cal. Rules of Court, rule 5.484(c).) As a result, in the instant case, the juvenile court correctly found ICWA was not applicable.

In their Appellant's Reply Briefs, Mother and Father contend this court should follow the precedent of *In re Jack C., III* (2011) 192 Cal.App.4th 967 (*Jack C.*). In *Jack*

---

[3] 25 U.S.C.A. section 1903(4) provides, "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

*C.*, the appellate court concluded, "Rule 5.482(c) does not, as the Agency contends, impermissibly expand ICWA beyond its jurisdictional limits. ICWA expressly permits state or federal law to provide a higher standard of protection to the rights of the Indian child and his or her parent or Indian guardian than the protection of rights provided under ICWA. [Citation.] Thus ICWA does not preempt such higher state standards. [Citation.]" (*Id.* at p. 981.)

The reasoning of *Jack C.* is not persuasive because the "state standard" as described in *Jack C.* should be the standard set forth by the Legislature. (*California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 22 [Judicial Council's rulemaking authority is subordinate to the Legislature].) The Rule of Court is contradicting the definition adopted by our state Legislature (§ 224.1, subd. (a)). In other words, it is not as though the State has failed to speak on the issue. The state Legislature has adopted a definition. Therefore, the Rule of Court is not filling a void in the state law by expanding the federal definition to provide greater protection. Rather, the rule it is contradicting the state Legislature's statutory definition of "Indian child."

Moreover, *Jack C.* is problematic because it relies on the reasoning that states may provide a higher standard of protection for Indian children. (*Jack C.*, *supra*, 192 Cal.App.4th at p. 981.) The federal law provides, "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian

child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard." (25 U.S.C.A. § 1921.)

In sum, federal law reflects greater protections may be given to an "Indian child" than those provided in the ICWA. However, the federal law does not reflect that the definition of "Indian child" itself may be expanded so as to protect a larger group of people. Rule 5.482(c) is not providing "a higher standard of protection to the rights of . . . an Indian child." (25 U.S.C.A. § 1921.) Instead, it is providing the same level of rights to a larger group of people. Thus, we are not persuaded by Mother's and Father's reliance on *Jack C.*, *ante*.

Mother contends that if the Rules of Court did not qualify J.S. as an Indian child, then the portion of the rule requiring "active efforts" was still applicable. (Cal. Rules of Court, rule 5.482(c) & (d)(2).) Assuming the Department had an obligation to complete J.S.'s tribal membership application, it appears the Department was trying to help with the application process. An entry in a contact log reflects, "Call from [Great-grandmother]. She received the applications for [birth certificates] that the Tribe wanted. They are requesting more information. I asked her to have her husband bring me the documents on Wed[nesday] when he brings [J.S.] for [a] visit. I reminded her that the Court found that ICWA does not apply. She said that they received a letter saying that he was eligible and they needed to complete the application." The contact occurred on March 25, 2013.

It is unclear what, if anything, happened with the documents. Thus, to the extent the Department was obligated to assist with J.S.'s tribal membership application, it can

6

be inferred the Department was making those efforts. (Cal. Rules of Court, rule 5.484(c).) The Department did not tell Great-grandmother it would not assist her; rather, it requested the documents be given to the social worker, indicating an active role in the application process. Accordingly, substantial evidence reflects the Department was fulfilling any obligation it may have in trying to secure tribal membership for J.S.

3.      The publication designation of the opinion is modified to "NOT TO BE PUBLISHED IN OFFICIAL REPORTS."

Except for these modifications, the opinion remains unchanged. The modifications do not affect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                        MILLER                        
                                                                   J.


I concur:


McKINSTER                        
              Acting P. J.


7

Filed 9/11/14 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E060554 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1200541) |
| v. | OPINION |
| M.P. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Lawrence P. Best, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant M.P.

Suzanne F. Evans, under appointment by the Court of Appeal, for Defendant and Appellant J.S.

1

Pamela J. Walls, County Counsel, Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court terminated M.P.'s (Mother) and J.S.'s (Father) parental rights to their son, J.S. (Welf. & Inst. Code, § 366.26.)[1] Father contends the juvenile court erred by finding ICWA is inapplicable in this case. Father also contends errors were made in relation to the ICWA inquiry and notice requirements. Mother joins in and expands upon Father's ICWA arguments. Mother also requests a different judicial officer preside over the case upon remand. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.    <u>DETENTION</u>

J.S. was born in January 2012. Mother and Father are developmentally delayed. On September 26, 2012, the Department received a referral reflecting Mother and Father were neglecting J.S. On October 2, Mother denied having Indian ancestry. On October 5, Father denied having Indian ancestry.

On October 15, the Riverside County Department of Public Social Services (the Department) took J.S. into protective custody. J.S. was placed in foster care. On October 17, the Department filed a petition alleging Mother and Father failed to protect J.S. (§ 300, subd. (b).) Specifically, it was alleged (1) Mother and Father suffered from mental health issues and cognitive delays, and (2) they engaged in domestic violence.

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

On October 18, Father filed a Parental Notification of Indian Status Form (ICWA-020) reflecting J.S.'s grandfather may be a member of a federally recognized tribe. Father did not know in which particular tribe the grandfather may have been a member. At the October 18 detention hearing, the juvenile court found ICWA may apply in this case, and ordered the Department to provide notice to the Bureau of Indian Affairs. The court found Father to be J.S.'s presumed father.

On November 1, J.S. was placed with his paternal great-grandparents. J.S.'s paternal great-grandfather (Great-grandfather) informed the Department that J.S. may have Cherokee ancestry, and provided the Department with documentation that J.S.'s paternal great, great-grandfather was Cherokee.[2]

B.    ICWA NOTICE AND RESPONSE

The Department sent notice of the proceeding to the Bureau of Indian Affairs, the Department of the Interior, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee. On November 14, the juvenile court found the Department provided proper ICWA notice.

The Cherokee Nation sent a letter to the Department, dated November 14, reflecting J.S. was a direct descendent of a tribal member. Specifically, J.S.'s paternal great, great-grandfather was an enrolled member of the tribe. The letter read, "This

---

[2] The report reflects the "maternal" great-grandfather supplied the information; however, based upon the great-grandfather's last name and that the ancestry is on J.S.'s father's side of the family, this appears to be a typographical error; it was the paternal grandfather who supplied the information. The great-grandfather who gave the information has the same last name as Father.

3

relationship makes [J.S.] eligible for enrollment and affiliation with [the] Cherokee Nation by having direct lineage to an enrolled member." The letter continued, "Cherokee Nation is not empowered to intervene in this matter unless [J.S.] or [his] eligible parent(s) apply for and receive membership. However, when tribal enrollment of the parent or [J.S.] occurs the tribe must be notified of their right to intervene. Due to the tribal eligibility of the child[] in question, Cherokee Nation recommends applying all the protections of ICWA to this matter from the beginning of the case. Hopefully this will prevent any future delays in procedural matters if or when the parents or [J.S.] become enrolled members meeting federal ICWA compliance." A membership application was enclosed with the letter.

On December 14, the juvenile court continued the jurisdiction hearing for two reasons: (1) to obtain the results of Father's psychological evaluation, and (2) because of "ICWA issues." Also on December 14, a Department social worker spoke via telephone to a representative of the Cherokee Nation. The Cherokee Nation said membership in the tribe had not been established for J.S. The Cherokee Nation requested (1) J.S.'s birth certificate; (2) Father's birth certificate; (3) J.S.'s paternal grandfather's birth certificate; and (4) Great-grandfather's birth certificate, so the direct lineage to the tribal member could be established. The Cherokee Nation also requested a custody order reflecting the State had custody of J.S.

C.    JURISDICTION

On January 18, 2013, the court held a jurisdiction hearing in this case. The court sustained the allegations in the second amended petition. The court found J.S. was not

4

an Indian child, and ICWA did not apply in this case. The court ordered J.S. removed from Mother's and Father's custody.

On February 22, J.S. was placed with his paternal great-aunt (Great-aunt), who was willing to provide J.S. with a permanent home in the event Mother and Father failed to reunify with J.S. On March 25, J.S.'s paternal great-grandmother (Great-grandmother) called a Department social worker and said she received a letter from the Cherokee Nation (the Tribe) reflecting J.S. needed to complete an application for tribal membership. Great-grandmother told the social worker the Tribe was "requesting more information." The social worker told Great-grandmother to have Great-grandfather bring "the documents" to the social worker when Great-grandfather brought J.S. for visitation. The record does not reflect if the documents were delivered to the social worker.

D.    SIX-MONTH REVIEW

J.S.'s six-month case review took place on July 17. At the hearing, the juvenile court again found J.S. was not an Indian child and ICWA did not apply in the case. On October 4, the court granted Great-aunt de facto parent status. On November 15, the Department filed a request to change a court order. The Department requested the court schedule a hearing to terminate Mother's and Father's parental rights, because Mother and Father agreed to allow J.S. to be adopted by Great-aunt. A letter attached to the written request reflected Mother and Father wanted Great-aunt to adopt J.S.; the letter was signed by Mother and Father.

5

E.    12-MONTH REVIEW AND TERMINATION

On January 17, 2014, the juvenile court held a combined hearing for (1) the 12-month review, and (2) selection and implementation.  At the beginning of the hearing, the Department explained it was requesting termination of parental rights and that adoption be selected as J.S.'s permanent plan.  Mother's attorney said, "Your Honor, on behalf of mother, she is in agreement with going forward, and she says the aunt is providing good care for the child.  She just wants to make sure the aunt is going to get educational rights for the child as well."  Father's attorney said, "Similarly, father is in agreement, and we join in the request of [Mother]."  Minor's counsel submitted.

The juvenile court found J.S. was likely to be adopted.  The court terminated Mother's and Father's parental rights.  The court ordered adoption be J.S.'s permanent plan.  The court again found J.S. was not an Indian child, and ICWA did not apply in this case.

## DISCUSSION

A.    WAIVER

Although Mother and Father agreed to the termination of their parental rights, we address the merits of their contentions because ICWA is intended to safeguard the interest of the tribe that may wish to claim the child as a member, and that interest may not be waived, forfeited, or lost by reason of any omission or failure by an individual. (*In re Z.N.* (2009) 181 Cal.App.4th 282, 296-297 ["failure to give tribal notice is not an issue forfeited by a parent's failure to object].)

6

B.   INDIAN CHILD

Father contends the juvenile court erred by finding ICWA does not apply in this case.

We apply the substantial evidence standard of review to the juvenile court's ICWA findings. (*Fresno County Dept. of Children and Family Services v. Superior Court* (2004) 122 Cal.App.4th 626, 643-646.)

"ICWA's procedural and substantive requirements must be followed in involuntary child custody proceedings when an 'Indian child' is involved." (*In re Jeffrey A.* (2002) 103 Cal.App.4th 1103, 1106.) An "Indian child," under federal and California law, is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

In regard to the first option—being a member—"membership criteria are the tribe's prerogative," membership is not a term defined by federal or state statutes. A tribe's membership decision is conclusive for purposes of ICWA. (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1253.) The letter from the Cherokee Nation reflects J.S. needs to apply for membership in the Tribe. The Tribe requested birth certificates be provided in order to officially establish J.S.'s direct lineage to a tribe member. Great-grandmother received a letter from the Tribe reflecting "they needed to complete the [membership] application." The evidence reflects J.S. was not a member of the Tribe because (1) he had not applied, and (2) his lineage had not been officially established

7

via birth certificates. Accordingly, J.S. does not qualify as an "Indian child" based upon membership in the Tribe.

We now address the second option—being eligible for membership and being the biological child of a tribe member. The evidence reflects J.S. is eligible for membership, because the Tribe sent a letter reflecting J.S. is "eligible for enrollment and affiliation with Cherokee Nation by having direct lineage to an enrolled member." However, there is no evidence reflecting J.S. is the biological child of a tribe member. Rather, the evidence reflects J.S. is the biological great, great-grandson of a tribe member. There is nothing in the record indicating Mother or Father are members of the Tribe. The Cherokee Nation's letter reflects only J.S.'s great, great-grandfather was a member, and the Tribe requested birth certificates tracing back to the great, great-grandfather in order to establish J.S.'s lineage. Thus, it does not appear Mother or Father were members of the Tribe. As a result, there is not substantial evidence of J.S. being an Indian child via the second option because he is not the child of a tribe member. Therefore, the juvenile court correctly found ICWA does not apply in this case, because J.S. is not an Indian child.

Mother asserts J.S. qualified as an Indian child pursuant to section 224.3, subdivision (e)(1), which provides, "A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive. Information that the child is not enrolled or eligible for enrollment in the

8

tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom."

The first sentence of the subdivision concerns the conclusive nature of the determination by the Indian tribe. We agree the Tribe conclusively determined J.S. is eligible for membership. We have found no dispute on the conclusive nature of the determination. However, being eligible for membership does not equate with being an Indian child as discussed *ante*. Therefore, we continue with our analysis.

The second sentence of the subdivision concerns a child who has been determined to not be enrolled or eligible for enrollment in the tribe. In this case, J.S. has been found to be eligible for enrollment, so the "not eligible" language is inapplicable in this case. Accordingly, we focus on the "not enrolled" portion of the second sentence. In the Tribe's letter to the Department, it wrote, "Enclosed you will find a membership application," and "Cherokee Nation is not empowered to intervene in this matter unless the child/children or eligible parent apply for and *receive membership*." (Italics added.) The letter goes on to reflect the Tribe may intervene in the case when J.S. and/or Father "become enrolled members meeting federal ICWA compliance." Thus, the Tribe confirmed in writing that J.S. was not a member of the Tribe because he had not yet "receive[d] membership."

Additionally, the letter reflects J.S. is "eligible for enrollment and affiliation with Cherokee Nation by having direct lineage to an enrolled member." Accordingly, the Tribe also confirmed in writing that J.S. is not enrolled in the Tribe—his ancestor was enrolled. In sum, the Tribe's letter confirms in writing that J.S. is not enrolled in the

9

Tribe and is not a member of the Tribe. Therefore, to the extent ICWA could be applicable pursuant to section 224.3, subdivision (e)(1), it is not applicable in this case.

## C. NOTICE AND INQUIRY

Father contends the Department erred by not continuing to provide notice to the Tribe, and the court erred by not ordering the Department to provide notice to the Tribe. Father also contends the Department and court erred by not continuing to inquire into J.S.'s Indian ancestry.

"ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. [Citations.] If there is reason to believe a child that is the subject of a dependency proceeding is an Indian child, ICWA requires that the child's Indian tribe be notified of the proceeding and its right to intervene. [Citations.]" (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1396.)

"Accordingly, federal and state law require that the notice sent to the potentially concerned tribes include 'available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data.' [Citations.] To fulfill its responsibility, the Agency has an affirmative and continuing duty to inquire about, and if possible obtain, this information. [Citations.] Thus, a social worker who knows or has reason to know the child is Indian 'is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing

10

the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2 . . . .' [Citation.] That information 'shall include' '[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known.' [Citation.] Because of their critical importance, ICWA's notice requirements are strictly construed. [Citation.]" (*In re A.G.*, *supra*, 204 Cal.App.4th at pp. 1396-1397.) Thus, an agency must inquire into the identifying information, and include that information in the notice to the tribes.

Challenges to the adequacy of ICWA notices and the Department's inquiry into a child's Indian ancestry are reviewed for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 [Fourth Dist., Div. Two] [substantial evidence for the duty of inquiry]; see also *In re Merrick V.* (2004) 122 Cal.App.4th 235, 247 [to determine whether notice was adequate, court must review whether sufficient information was provided by the agency].)

We address the inquiry issue first. As set forth *ante*, the Department was required to inquire into J.S.'s parents, grandparents, and great-grandparent names, addresses, birthdates, birth places, dates of death, and tribal information. (§ 224.2, subd. (a)(5)(C).) On October 18, 2012, Father alerted the Department that J.S. may have Indian ancestry. A Department social worker spoke to Great-grandfather, who supplied information about J.S.'s great, great-grandfather being Cherokee. The notice

11

sent to the tribes included Mother's and Father's names, birthdates, and places of birth. It also included the possible tribe affiliations for Father. The notice included J.S.'s grandmothers' names, his maternal grandmother's date of birth, and his paternal grandmother's date and place of death. The notice had information about J.S.'s paternal grandfather's name and possible tribal affiliations. Also included was Great-grandfather's name, address, date of birth and birth place, and possible tribal affiliations, along with J.S.'s great, great-grandfather's name, date of birth, place of birth, tribal enrollment number, possible tribal affiliations, year of death, and place of death.

Based upon the information provided in the notice, the Cherokee Nation was able to determine J.S. was eligible for enrollment in the Tribe due to "having direct lineage to an enrolled member," specifically J.S.'s paternal great, great-grandfather. Given the amount of information in the notice, and that the information was sufficient for the Cherokee Nation to find a direct lineage, which caused J.S. to be eligible for enrollment, we conclude there is substantial evidence reflecting the Department satisfied its duty of inquiry regarding familial information.

The same analysis applies to the notice issue. The notice was sent to the tribes in October 2012, prior to the January 2013 jurisdiction hearing. The notice was sent to the Cherokee Nation, which found J.S. to be eligible for enrollment based upon the information provided in the notice. The foregoing is substantial evidence that the notice sent was sufficient, because it permitted the Cherokee Nation to locate J.S.'s direct ancestry.

12

It appears the notice may have been deficient in that it failed to include a copy of J.S.'s birth certificate. (§ 224.2, subd. (a)(5)(E).) However, this error is harmless, because, even without the birth certificate, the Tribe was able to locate J.S.'s "direct lineage to an enrolled member." (*In re E.W.* (2009) 170 Cal.App.4th 396, 402-403 ["where notice has been received by the tribe . . . errors or omissions in the notice are reviewed under the harmless-error standard"].) The Tribe later requested copies of all the birth certificates for J.S., Father, J.S.'s grandfather, and Great-grandfather, to officially establish the direct lineage, presumably for the application process; however, the failure to include J.S.'s birth certificate in the notice was harmless because the lineage was still found without the birth certificate.

In sum, the inquiry and notice were sufficient, and any error related to the birth certificate not being included in the notice was harmless. The Department gathered sufficient identifying information, and the Department sent sufficient identifying information to the tribes.

D.    ACTIVE EFFORTS

Although not cited in Mother's and Father's Appellants' Opening Briefs, the Department, in its Respondent's Brief, raises California Rules of Court, rule 5.482(c), and asserts the judgment should be affirmed despite the rule, due to case law. California Rules of Court, rule 5.482(c) provides, "If after notice has been provided as required by federal and state law a tribe responds indicating that the child is eligible for membership if certain steps are followed, the court must proceed as if the child is an

Indian child and direct the appropriate individual or agency to provide active efforts under rule 5.484(c) to secure tribal membership for the child."

Father, in his Appellant's Opening Brief, argued, within his "notice and inquiry" contention, "the application for membership was never completed." For the sake of thoroughly addressing the issues raised by Father and the Department, we will address the ICWA issue in light of California Rules of Court, rule 5.484(c).

In *In re Abbigail A.* (2014) 226 Cal.App.4th 1450, 1453 (*Abbigail A.*), the juvenile court directed the agency "to take active efforts to enroll" the two minors at issue in the case in the Cherokee Nation of Oklahoma, "which had stated the minors were not members but were eligible for membership." The minors' father was not a tribe member, but the minors' paternal great-aunt and great-grandmother were members of the tribe. (*Ibid.*) The agency appealed, arguing (1) federal law preempted California Rules of Court, rule 5.482(c), in that ICWA could not be applied to minors who are not Indian children; and (2) California Rules of Court, rule 5.482(c) was inconsistent with state law, in particular the definition of "Indian child" (§ 224.1, subd. (a)). (*Abbigail A.*, at pp. 1453-1454.)

The appellate court agreed with the agency on the second point, that California Rules of Court, rule 5.482(c) was "inconsistent with the legislative definition of the class of protected Indian children, and therefore the Judicial Council lacked authority to expand the definition." The appellate court reversed the juvenile court's judgment with directions to provide no ICWA protections to the minors until the time that the minors

14

or their father became enrolled members of the Cherokee Nation of Oklahoma. (*Abbigail A.*, *supra*, 226 Cal.App.4th at p. 1454.)

California law reflects it has adopted the federal definition of the term "Indian child." (§ 224.1, subd. (a).)[3] The federal (and California adopted) definition limits the term "Indian child to children who are tribal members or are children of tribal members." (*Abbigail A.*, *supra*, 226 Cal.App.4th at p. 1456.) The appellate court concluded Congress wanted this "limited definition to apply uniformly," and not be expanded, because there was nothing in the statute indicating the states were authorized to expand the definition. (*Id.* at p. 1458.)

Further, the appellate court explained that a state's right to provide greater ICWA protections would "not have any bearing on the definition of 'Indian child,'" because the term does not appear in the subchapter of the code wherein states are granted the authority to provide a higher level of protection. (*Abbigail A.*, *supra*, 226 Cal.App.4th at p. 1457.)

The appellate court concluded California Rules of Court, rule 5.482(c) is "inconsistent with state law and consequently [the juvenile court] could not authorize the application of the ICWA in the present proceedings to minors who are not Indian children within the meaning of the ICWA." (*Abbigail A.*, *supra*, 226 Cal.App.4th at p.

---

[3] For reference, section 224.1, subdivision (a), provides, "As used in this division, unless the context requires otherwise, the terms 'Indian,' 'Indian child,' 'Indian child's tribe,' 'Indian custodian,' 'Indian tribe,' 'reservation,' and 'tribal court' shall be defined as provided in Section 1903 of the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.)."

1461.)  Essentially, California Rules of Court, rule 5.482(c) improperly expanded the definition of Indian child to include children eligible for membership, who did not have a parent who was a tribal member.  Thus California Rules of Court, rule 5.482(c) was improper, because it made ICWA applicable to children who did not meet the state Legislature's adopted definition of "Indian child."  (*Ibid.*)

We agree with the reasoning of *Abbigail A.*  California Rules of Court, rule 5.482(c) creates a new class of people eligible for ICWA protections; therefore, it is inconsistent with the state law, which does not indicate the definition may be expanded.  (§ 224.1, subd. (a) & Cal. Rules of Court, rule 5.484(c).)  Thus, in the instant case, the juvenile court correctly found ICWA was not applicable.

In their Appellant's Reply Briefs, Mother and Father contend this court should follow the precedent of *In re Jack C., III* (2011) 192 Cal.App.4th 967 (*Jack C.*), as opposed to *Abbigail A.*  In *Jack C.*, the appellate court concluded, "Rule 5.482(c) does not, as the Agency contends, impermissibly expand ICWA beyond its jurisdictional limits.  ICWA expressly permits state or federal law to provide a higher standard of protection to the rights of the Indian child and his or her parent or Indian guardian than the protection of rights provided under ICWA.  [Citation.]  Thus ICWA does not preempt such higher state standards.  [Citation.]"  (*Id.* at p. 981.)

The reasoning of *Jack C.* is not persuasive because the "state standard" as described in *Jack C.* should be the standard set forth by the Legislature.  (*California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 22 [Judicial Council's rulemaking authority is subordinate to the Legislature].)  The Rule

16

of Court is contradicting the definition adopted by our state Legislature (§ 224.1, subd. (a)). In other words, it is not as though the State has failed to speak on the issue. The state Legislature has adopted a definition. Therefore, the Rule of Court is not filling a void in the state law by expanding the federal definition to provide greater protection. Rather, the rule it is contradicting the state Legislature's statutory definition of "Indian child."

Moreover, *Jack C.* is problematic because it relies on the reasoning that states may provide a higher standard of protection for Indian children. (*Jack C.*, *supra*, 192 Cal.App.4th at p. 981.) The federal law provides, "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard." (25 U.S.C.A. § 1921.)

In sum, federal law reflects greater protections may be given to an "Indian child" than those provided in the ICWA. However, the federal law does not reflect that the definition of "Indian child" itself may be expanded so as to protect a larger group of people. Rule 5.482(c) is not providing "a higher standard of protection to the rights of . . . an Indian child." (25 U.S.C.A. § 1921.) Instead, it is providing the same level of rights to a larger group of people. Thus, we are not persuaded by Mother's and Father's reliance on *Jack C.*, *ante*.

Mother contends that if the Rules of Court did not qualify J.S. as an Indian child, then the portion of the rule requiring "active efforts" was still applicable because that

17

portion of the rule was not addressed by *Abbigail A.* or *Jack C.* (Cal. Rules of Court, rule 5.482(c) & (d)(2).) Assuming the Department had an obligation to complete J.S.'s tribal membership application, it appears the Department was trying to help with the application process. An entry in a contact log reflects, "Call from [Great-grandmother]. She received the applications for [birth certificates] that the Tribe wanted. They are requesting more information. I asked her to have her husband bring me the documents on Wed[nesday] when he brings [J.S.] for [a] visit. I reminded her that the Court found that ICWA does not apply. She said that they received a letter saying that he was eligible and they needed to complete the application." The contact occurred on March 25, 2013.

It is unclear what, if anything, happened with the documents. On October 7, 2013, Mother and Father signed the handwritten letter reflecting they agreed to free J.S. for adoption. Thus, to the extent the Department was obligated to assist with J.S.'s tribal membership application, it appears the Department was making those efforts. (Cal. Rules of Court, rule 5.484(c).) The Department did not tell Great-grandmother it would not assist her; rather, it requested the documents be given to the social worker, indicating an active role in the application process, which ended when Mother and Father agreed to free J.S. for adoption. Accordingly, substantial evidence reflects the Department was fulfilling any obligation it may have in trying to secure tribal membership for J.S.

18

E.   JUDICIAL OFFICER

We have found no errors that require this matter to be returned to the juvenile court.  Accordingly, we do not address Mother's request that this case be heard before a different judicial officer upon remand because the issue is moot.  (See *In re Albert G.* (2003) 113 Cal.App.4th 132, 135 [an issue is moot when no relief can be granted].)

**DISPOSITION**

The judgment is affirmed.

CERTIFIED FOR PUBLICATION


MILLER _____
                                    J.


We concur:


McKINSTER _____
         Acting P. J.


RICHLI _____
                    J.


19