Filed 11/6/14  In re F.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.R., Defendant and Appellant. | E061331 (Super.Ct.Nos. J247661, J247662) **OPINION** |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

A.R. (father) appeals from an order terminating parental rights to his twin infant sons, F.R. and A.R., Jr. His sole appellate contention is that the trial court and County Children and Family Services (Department) gave notice of the proceedings in a manner that failed to conform fully with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related federal and state law.

We will hold that the father did not forfeit this contention by failing to appeal earlier, immediately after the juvenile court found that ICWA did not apply. However, on the merits, we will hold that the trial court's implied rejection of most of the asserted defects in the notice was supported by substantial evidence, and the remaining defects were harmless.

I

PROCEDURAL BACKGROUND

The father and A.C. (mother) are the parents of twins, F.R. and A.R., Jr. (collectively children). When the children were born, they tested positive for methamphetamine. At the time, the father was in jail; his expected release date was 18 months away. About three weeks after the birth, the mother was arrested for a parole violation. Thus, the Department detained the children and filed dependency petitions as to them.[1]

---

[1] At the same time, the Department also detained and filed a petition regarding the children's half-sister, N.C. Because the only appellant is the children's father, and because he is not the father of N.C., N.C. is not a party to this appeal.

In February 2013, at the jurisdictional/dispositional hearing, the juvenile court found jurisdiction over the children based on failure to protect (Welf. & Inst. Code, § 300, subd. (b)) and failure to support (*id*., § 300, subd. (g).) It formally removed the children from the parents' custody and ordered reunification services for both parents.

In August 2013, at the six-month review hearing, the juvenile court terminated reunification services and set a hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26).

In January 2014, the children were placed with their paternal grandmother, who wanted to adopt them.

In May 2014, at the section 366.26 hearing, the juvenile court terminated parental rights.

II

ICWA NOTICE

A.      *Additional Factual and Procedural Background*.

The mother filed an ICWA form stating that she "may have" either Cherokee or Papago ancestry. At the detention hearing, she confirmed this. The maternal grandmother, who was also present, stated that her grandfather was a "full-blooded Cherokee."

A Department staffer sent ICWA notices to the three federally recognized Cherokee tribes (the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians), the two federally

3

recognized Papago tribes (the Ak Chin Indian Community Council and the Tohono O'Odham Nation), and the Bureau of Indian Affairs (BIA).  (See State Department of Social Services, Federally-Recognized Tribes:  ICWA Contacts for Noticing Purposes (2014).[2])

The notices included the following information about the mother and her immediate ancestors:

| | Current name | Maiden name | Current address | Former address | Birthdate | Birthplace |
|---|---|---|---|---|---|---|
| Mother | X | | X | X | X | X |
| Maternal grandmother | X | | X | City & state only | X | |
| Maternal grandfather | X | | City & state only | | | |
| Maternal great-grandmother | First name only | | Not applicable (deceased) | | | |
| Maternal great-grandfather | X | | City & state only | X | Month & day only | |
| Maternal great-grandmother | X | | State only | | Month & day only | |
| Maternal great-grandfather | | | | | | |

**2**      Available at <http://www.childsworld.ca.gov/res/pdf/cdsstribes.pdf>, as of Oct. 29, 2014.

With regard to all information not given, the notices stated, "No information available." The notices also stated, "I/we have given all information I/we have about the relatives . . . of the child . . . ." The staffer executed them under penalty of perjury.

The Department represented to the court that it had received responses from all five tribes "indicating the child does not qualify for membership." It also filed copies of the following responses from four of the tribes:

1. The Cherokee Nation of Oklahoma responded that, to make a determination, it needed the complete name and date of birth of (1) the father, (2) the maternal grandfather, and (3) one of the maternal great-grandmothers.

The staffer wrote back, stating that she had "contacted the parents/relatives," and there was "[n]o additional information."

The Cherokee Nation of Oklahoma then responded that the information provided was insufficient for it to make a determination, and it was "closing [the] inquiry."

2. The United Keetoowah Band of Cherokee Indians responded that, based on the information provided, there was no evidence that the children were members or eligible to be members of the tribe.

3. The Eastern Band of Cherokee Indians responded that, based on the information provided, the children were not members or eligible to be members of the tribe.

4. The Ak Chin Indian Community Council responded that it had determined that the children were not members or eligible to be members of the tribe.

The Department did not file the response from the Tohono O'Odham Nation.

In April 2013, at a "non-appearance review" hearing, the juvenile court found that "ICWA does not apply."

B.     *Analysis*.

1.     *Legal background*.

"Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'" [Citation.]" (*In re W.B.* (2012) 55 Cal.4th 30, 48.) "In certain respects, California's Indian child custody framework sets forth greater protections for Indian children, their tribes and parents than ICWA. [Citations.] Both federal and state law expressly provide that if a state or federal law provides a higher level of protection to the rights of the parent or Indian guardian of an Indian child, the higher standard shall prevail. [Citations.]" (*In re Jack C.* (2011) 192 Cal.App.4th 967, 977.)

Under ICWA, whenever "the court knows or has reason to know that an Indian child is involved," notice of the proceedings must be given to "the parent . . . and the Indian child's tribe. . . ." (25 U.S.C. § 1912(a).) "If the identity . . . of the . . . tribe cannot be determined," the notice must be given to the BIA. (*Ibid*.; 25 C.F.R. § 23.11(b), (c).) "The juvenile court '"needs only a suggestion of Indian ancestry to trigger the notice requirement."'" [Citation.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.)

Under federal regulations implementing ICWA, as well as under state law, the notice must include the names (including maiden, married, and former names), current

6

and former addresses, birthdates, and places of birth and death of the child's parents, grandparents, and great grandparents, "if known." (25 C.F.R. § 23.11(a), (d); Welf. & Inst. Code, § 224.2, subd. (a)(5)(C).) Under state law, "[p]roof of the notice, including copies of notices sent and all return receipts and responses received, shall be filed with the court . . . ." (Welf. & Inst. Code, § 224.2, subd. (c).)

State law further provides that "[t]he court [and the] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a [dependency] petition . . . has been[] filed is or may be an Indian child . . . ." (Welf. & Inst. Code, § 224.3, subd. (a); see also Cal. Rules of Court, rule 5.481(a).) "If the court [or] social worker . . . knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members . . . ." (Welf. & Inst. Code, § 224.3, subd. (c).)

"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence. [Citation.]" (*In re E.W.* (2009) 170 Cal.App.4th 396, 403-404.)

"A notice violation under ICWA is subject to harmless error analysis. [Citation.] 'An appellant seeking reversal for lack of proper ICWA notice must show a reasonable probability that he or she would have obtained a more favorable result in the absence of the error.' [Citation.]" (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 715.)

7

2.      *Failure to appeal from the ICWA finding*.

Preliminarily, the Department contends that the father has forfeited his contention by failing to appeal sooner and by failing to raise the contention in such an appeal.

The leading case on which the Department relies is *In re Pedro N.* (1995) 35 Cal.App.4th 183 [Fifth Dist.]. There, at the disposition hearing in July 1992, the mother indicated that she was a member of a particular Indian tribe. Nevertheless, the trial court proceeded to make dispositional orders. The social services agency never gave notice to the tribe. (*Id.* at p. 187.) In August 1994, the juvenile court terminated parental rights. (*Id.* at p. 185.)

The appellate court held that the mother could not raise the failure to give ICWA notice in an appeal from the termination order: "Although the proceedings leading up to and including the juvenile court's disposition were appealable [citations], the mother did not raise the question of notice until the court terminated her rights approximately two years later. . . . An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed. [Citation.] Here, the mother could have challenged the court's decision to proceed at the dispositional hearing and did not do so." (*Id.* at p. 189.) In conclusion, it cautioned, "we have only addressed the rights of the mother and do not attempt to determine the rights of any tribe . . . ." (*Id.* at p. 191.)

A string of subsequent cases rejected *Pedro N.* In *In re Marinna J.* (2001) 90 Cal.App.4th 731 [Third Dist.], the court noted that ICWA gives Indian tribes specific

rights, including not only the right to notice, but also the right to "petition any court to invalidate a child dependency proceeding on a showing of a violation of the notice provisions of the Act." (*Id*. at p. 738.) When a tribe does not receive notice, it is unable to assert its rights under ICWA. (*Id*. at p. 739.) The court concluded that "it would be contrary to the terms of [ICWA] to conclude, as the court did implicitly in *In re Pedro N.*, . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding." (*Ibid*.)

In *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, the court "respectfully disagree[d] with *Pedro N.* and follow[ed] *Marinna J.*, albeit under a different analysis." (*Id*. at p. 260.) It noted that under rule 1439(f)(5) of the California Rules of Court, then in effect, "'[n]otice shall be sent whenever there is reason to believe the child may be an Indian child, *and for every hearing thereafter unless and until it is determined that the child is not an Indian child*.' [Citation.][3] Because the court's duty continues until proper notice is given, an error in not giving notice is also of a continuing nature and may be challenged at any time during the dependency proceedings. . . . Though delay harms the interests of dependent children in expediency and finality, the parents' inaction should not be allowed to defeat the laudable purposes of the ICWA." (*Id*. at p. 261; accord, *In re B.R.* (2009) 176 Cal.App.4th 773, 779 [First Dist., Div. One]

---

**3**   Rule 1439 is no longer in effect, but Welfare and Institutions Code section 224.2, subdivision (b) now similarly provides that "[n]otice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter, . . . unless it is determined that [ICWA] does not apply to the case . . . ."

["We agree with the view taken in *In re Marinna J. . . .* , which questioned the conclusion reached in *Pedro N. . . . .*"]; see also *In re A.G.* (2012) 204 Cal.App.4th 1390, 1400 [First Dist., Div. Three] [father's ICWA claim not barred by res judicata even though he could have, but did not, raise it in appeal from previous termination of parental rights as to child's sibling.].)[4]

Most recently, however, *In re Isaiah W.* (2014) 228 Cal.App.4th 981 [Second Dist., Div. Three], (pet. for rev. filed Sept. 17, 2014), became the first case to agree with *Pedro N.* There, at the jurisdictional/dispositional hearing, the juvenile court found that ICWA did not apply. At that point, the mother did not appeal. Later, however, she appealed from the order terminating parental rights and argued that the juvenile court had erred by finding that ICWA did not apply. (*Id.* at p. 986.)

The appellate court held that mother had forfeited any challenge to the finding that ICWA did not apply. (*In re Isaiah W.*, *supra*, 228 Cal.App.4th at pp. 986-988.) It explained: "We decline to adopt the implied conclusion in *Marinna J.* and *Dwayne P.* that there is no time limit on a parent's right to raise the issue of ICWA compliance. To allow a parent unlimited time within which to raise this challenge would violate the child's constitutional right to a stable and permanent home. [Citation.] Children have a

---

[4]     For the sake of completeness, we note *In re Miracle M.* (2008) 160 Cal.App.4th 834. There, the court held that the mother had forfeited her ICWA notice claim; however, it is not entirely clear whether it relied on her failure to file a timely appeal from the juvenile court's ICWA finding, or on her failure to raise the asserted notice defect in the trial court. (See *id.* at pp. 846-847.) The ambiguity is compounded by the fact that the court did not cite *Pedro N.*, *Marinna J.*, or *Dwayne P.*

10

constitutional interest in stability, [citation], and in California, the courts have held that this includes the 'right to a reasonably directed early life, unmarked by unnecessary and excessive shifts in custody . . . .' [Citation.] Accordingly, in the context of dependency proceedings, 'where a child has formed familial bonds with a de facto family with whom the child was placed owing to a biological parent's unfitness [citation] . . . and where it is shown that the child would be harmed by any severance of those bonds, the child's constitutionally protected interests outweigh those of the biological parents.' [Citation.]" (*Id*. at p. 986.) It concluded by "not[ing] that, as in *Pedro N.*, we are only addressing the rights of mother, not the rights of a tribe under the ICWA. [Citation.]" (*Id*. at p. 988.)

It could be argued that our case is factually distinguishable from *Pedro N.,* because here, the juvenile court made its finding that ICWA did not apply at the six-month review hearing, not at the jurisdictional/dispositional hearing. Also at the six-month review hearing, it set a section 366.26 hearing. Thus, the father was barred from filing an immediate appeal. (Welf. & Inst. Code, § 366.26, subd. (l).) However, he could have filed an extraordinary writ petition. (*Ibid*.) Moreover, by statute, his failure to file a timely extraordinary writ petition prohibits him from filing any later appeal from the orders entered at that hearing. (*Ibid*.)

In any event, we agree with *Marinna J.* that the ICWA notice issue has not been forfeited, for two reasons. First, as the court reasoned in *Marinna J.*, it is all too well-established that "'[t]he notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be waived by the parent.

11

[Citation.]' [Citation.] Thus, 'where the notice requirements of the Act were violated and the parents did not raise that claim in a timely fashion, the waiver doctrine cannot be invoked to bar consideration of the notice error on appeal.' [Citation.]" (*In re Suzanna L.* (2002) 104 Cal.App.4th 223, 231-232 [Fourth Dist., Div. Two].) We see no relevant distinction between failure to raise the issue in the court below and failure to raise the issue in a prior appeal. In both circumstances, allowing a parent to raise the issue protects the tribe's right to notice. Contrary to *Pedro N.* and *Isaiah W.*, it is not an adequate remedy that the tribe could still challenge the ICWA notice; if it never gets notice, it will never know that there is anything to be challenged.

Second, after *Pedro N.* was decided, the Legislature enacted Welfare and Institutions Code section 224.3, which provides, as relevant here, that "[t]he court [and the] county welfare department . . . have an affirmative and *continuing* duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child . . . ." (Welf. & Inst. Code, § 224.3, subd. (a), emphasis added.) Admittedly, "[i]f proper and adequate notice has been provided . . . , and neither a tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, the court may determine that [ICWA] does not apply to the proceedings . . . ." (Welf. & Inst. Code, § 224.3, subd. (e)(3).) By negative implication, however, a finding that ICWA does not apply *can* be reopened if "proper and adequate notice" has *not* been provided.

12

Thus, in this appeal, the father is not raising an untimely challenge to the ICWA finding at the six-month review hearing. Rather, he is raising a timely challenge to the trial court's failure to revisit the ICWA issue at the section 366.26 hearing.

We also question *Isaiah W.*'s reliance on constitutional principles. Perhaps giving parents "unlimited time" to raise an ICWA notice challenge would violate due process, but our holding does not do so. Rather, the challenge must be raised, at the latest, in an appeal from the order terminating parental rights, which is processed expeditiously under special "fast-track" rules. (See Cal. Rules of Court, rule 8.416.) Moreover, even if the challenge is successful, it does not result in the reversal of any earlier orders. (*In re Jonathon S*. (2005) 129 Cal.App.4th 334, 340-342 [Fourth Dist., Div. Two].) It merely results in a limited remand for the purpose of ICWA compliance. (E.g., *In re Francisco W*. (2006) 139 Cal.App.4th 695, 711.) We see no reason why it is any more unconstitutional to let a parent raise an ICWA notice issue, albeit belatedly, than it is to let a parent raise any other issue that could potentially result in reversal of the order terminating parental rights.

Congress and/or the Legislature could well decide, as a matter of policy, that a parent must raise an ICWA notice issue on appeal at the first possible opportunity, and that the failure to do so forfeits the issue. However, they have not done so. In light of the weight of the authority to the contrary, we feel constrained to hold that, under current law, there is no forfeiture under these circumstances.

3.     *Substantial evidence of ICWA compliance*.

We turn, then, to whether there has, in fact, been an ICWA notice violation.

"'On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1525.) "Mere support for a contrary conclusion is not enough to defeat the finding [citation]; nor is the existence of evidence from which a different trier of fact might find otherwise in an exercise of discretion [citation]." (*In re H.E.* (2008) 169 Cal.App.4th 710, 724.)

As should be apparent from all the blanks and qualifications in the table above, the notices did not include all of the information that they were supposed to include, "if known." (25 C.F.R. § 23.11(a), (d).) However, the Department staffer stated, under penalty of perjury, that no other information was available. In response to the letter from Cherokee Nation of Oklahoma, she also stated that she had "contacted the parents/relatives," and there was "[n]o additional information." This was substantial evidence that the notice complied with ICWA requirements.

The father argues that the Department evidently did not contact the maternal grandmother, Brenda C., because she would have known her own maiden name, both of her parents' full names, and her full former address, as well as other omitted information. As the father points out, the Department was in contact with Brenda. She gave her phone

14

number at the detention hearing, the Department assessed her as a possible relative placement, and she accompanied the mother to visits with the children.

The failure to list Brenda's maiden name was harmless error, however, because the notice did list the last names of two of the maternal great-grandparents; the last names of the other two great-grandparents were unknown. While it did not indicate which of the last names listed was Brenda's maiden name, it was obviously one or the other.

Leaving aside Brenda's maiden name, it is possible that Brenda did not know the omitted information. Some children — sad though it is to say — simply do not know who their fathers are. Women have children by men without learning their birthdates or birthplaces. And we do not necessarily remember our former street addresses, especially from years ago. It is also possible that Brenda was evasive or uncooperative and simply claimed that she did not know. "On appeal, '[t]estimony may be rejected only when it is inherently improbable or incredible, i.e., "'unbelievable *per se*,'" physically impossible or "'wholly unacceptable to reasonable minds.'" [Citations.]' [Citation.]" (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786.) The staffer's testimony here was not incredible.

The father complains that the notice did not indicate which of the persons listed were supposedly Cherokee. While there is a space on the Judicial Council form for "[t]ribe or band, and location," it was already established that Brenda did not know which Cherokee tribe her grandfather was affiliated with. Moreover, the failure to provide this

15

information, if error at all, was harmless. Presumably *all* of the tribes checked to see if *any* of the persons listed were members.

The father argues that the Department did not introduce any evidence as to what investigation it carried out or as to whom it interviewed. However, he does not point to any requirement that it do so. If he had raised the ICWA notice issue in the juvenile court, he could have subpoenaed Department employees and questioned them about their efforts (or lack thereof). In that event, of course, the Department could also have introduced additional evidence to show that it made an adequate inquiry. Instead, the father lay in wait and did not spring this issue until the matter was on appeal. At this point, he must take the record as he finds it. As long as there is *substantial* evidence of ICWA compliance, the fact that the Department did not introduce *additional* evidence is irrelevant.

The father also argues that the Department failed to file the response from the Tohono O'Odham Nation. This is harmless error, because the Department represented that all five responses indicated that the children were not Indian children. The father labels this representation "erroneous." Admittedly, only one of the responses stated definitively that the children were not Indian children; another response stated that there was not enough information to determine whether the children were Indian children, while still others stated that the children were not Indian children based on the information provided. Obviously the Department was not trying to mislead the court, however, as it attached the responses themselves. Moreover, the Department's

16

characterization of the responses, while not strictly accurate, was not *materially* false. Regardless of whether the responses stated definitively that the children were not Indian children, or merely stated that it could not be determined whether they were Indian children, their effect was the same — the juvenile court could find that ICWA did not apply.  (Welf. & Inst. Code, § 224.3, subd. (e)(3).)

We therefore conclude that the father has not demonstrated any prejudicial error.

III

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

17